In re J. F. Figueroa Maestre, querellado.

Núm. 54.—*Sometido:* Marzo 11, 1941. *Resuelto:* Abril 17, 1941.

*J. F. Figueroa Maestre, pro se; R. A. Gómez, Fiscal del Tribunal Supremo y Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Se trata de un procedimiento de *disbarment* radicado por el fiscal de este tribunal, por delegación del Procurador General de Puerto Rico, en el que se imputó al querellado J. F. Figueroa Maestre la comisión de varios actos delictivos en relación con el ejercicio de su profesión de abogado-notario. La querella contiene doce cargos consistentes todos ellos, no solamente en haber dejado el querellado de adherir las correspondientes estampillas de rentas internas en muchas escrituras matrices correspondientes a los protocolos de los años 1929 a 1939, ambos inclusives, sino que dichas escrituras aparecen como si hubiesen tenido sellos adheridos y hubieran sido luego despegados, habiéndose defraudado al Pueblo de Puerto Rico en la suma de doscientos treinta dólares, setenta y cinco centavos ($230.75).

Notificado debidamente el querellado con copia de la querella radicó un escrito titulado "Eliminación, excepciones y contestación de la querella", en el que, después de negar todos y cada uno de los cargos formulados en la querella, como materia de defensa alegó lo siguiente:

"Que el motivo del desprendimiento de los sellos en las escrituras fué un accidente completamente fortuito, por lo inesperado e imprevisto, que tuvo lugar el día 23 a amanecer el 24 del mes de noviembre de 1939, consistente en haber sido averiados dichos protocolos por el tiempo lluvioso y huracanado a que estuvieron sometidos durante largo rato, en ocasión en que el querellado los había llevado a su casa en el campo de Utuado, como a dos kilómetros de la población, con idea de depositarlos al día siguiente en el Oficio del compañero Suliveras Colón de Utuado; habiendo dado conocimiento de dicho accidente a la Hon. Corte de Distrito de Arecibo, la cual ordenó una investigación que fué practicada por su Fiscal, a quien entregó todos los tomos, así como una caja de cartón conteniendo los sellos desprendidos y recogidos, el querellado.

"Que esos sellos desprendidos y recogidos fueron nuevamente adheridos a los protocolos por indicación de la corte de distrito y de su Fiscal y que el querellado, no pudo reintegrar los que faltaban porque su situación económica no se lo permitió. Que el Colegio de

Abogados de Puerto Rico le concedió un préstamo por CIENTO CIN-
CUENTA DÓLARES para adquirir los sellos pero que, como la cantidad
no subía al importe necesitado, el querellado desistió de dicho prés-
tamo, noticiando al agente de la compañía de fianza su deseo de
cesar como Notario y que, posteriormente, este Hon. Tribunal le
concedió sesenta días de término para prestar nueva fianza o entregar
los protocolos al archivero de Arecibo, habiendo efectuado la entrega.

"Que todos los protocolos tenían, antes del día 24 de noviembre
de 1939 todos los sellos correspondientes a todas las escrituras, de-
bidamente cancelados y que en ninguna ocasión, época ni momento,
el querellado removió ni despegó sello alguno, ni tocó en ninguna
forma ninguna de las escrituras en ellos contenidas."

Señalada la audiencia del día 11 de marzo de 1941 para
la consideración de los cargos por este tribunal, se celebró
ésta compareciendo el querellante representado por los Fis-
cales Sres. Gómez y Negrón, y el querellado por derecho pro-
pio. Discutidas y sometidas por las partes las cuestiones
legales planteadas por el querellado, el tribunal resolvió no
haber lugar a las eliminaciones solicitadas y declaró sin lugar
las excepciones. Se procedió entonces a la vista del caso en
su fondo y declararon como testigos del querellante el Lic.
Ulpiano Crespo, Jr., Archivero General de Protocolos del
Distrito de Arecibo, el Sr. Juan Ramírez Vega, Secretario
de la Corte de Distrito de Arecibo y el Lic. Julio Suárez
Garriga, ex fiscal del mismo distrito mencionado. Como evi-
dencia documental presentó el querellante los once protoco-
los notariales del querellado correspondientes a los años 1929
a 1939; de un expediente de la Corte de Distrito de Arecibo
la lista de los sellos de rentas internas que aparecían en una
cajita de cartón llevada a la corte por el querellado, así como
la lista de los sellos que faltaban a las escrituras otorgadas
por el querellado, las que fueron admitidas sin oposición.

Como testigos del querellado declararon los Lics. Antonio
E. Suliveres, Eduardo Marín Marién, Angel E. Franco y
Gaspar Gerena Bras y el Sr. Rafael Cortés. También
declaró el querellado y las partes estipularon que de haber

comparecido la esposa del querellado hubiera declarado lo mismo que él.

Concedidos términos a las partes para radicar alegatos lo han hecho y el caso está listo para fallo.

La evidencia del querellante, no contradicha por el querellado en forma alguna, ha demostrado que en las trescientas cuarenticinco (345) escrituras que se especifican en la querella correspondientes a los protocolos de los años 1929 a 1939 faltan sellos de rentas internas por un valor de $230.75; que, con excepción de unas cinco escrituras, en todas las demás en que faltan dichos sellos aparecen claramente las señales de que los mismos han sido despegados; que en muchos casos aparecen señales, tales como rasgaduras y desgarres en el papel que demuestran que los sellos fueron arrancados; que los protocolos del querellado están en ese estado desde que los entregó al Archivero General de Protocolos del Distrito de Arecibo en 30 de mayo de 1940 y así estaban también cuando, por orden del juez de dicha corte los entregó en fecha anterior al fiscal de dicho distrito.

La evidencia del querellado tendió a demostrar los hechos que alegó en su defensa especial, supra. Declaró él, en síntesis, que habiendo resuelto trasladar su oficina de Utuado a Ponce y teniendo que arreglar el *file* de acero donde guardaba sus protocolos notariales llevó éstos el 22 de noviembre de 1939 a la casa en que vivía en el campo, a dos kilómetros del pueblo de Utuado; que colocó los protocolos en una tablilla y durante la noche del 23 al 24 de noviembre llovió mucho y ocurrió una especie de turbión que desprendió las canales del agua, penetrando ésta en forma torrencial dentro de la casa y averió todos los protocolos a los que se les despegaron los sellos de rentas internas; que él secó dichos sellos y protocolos como pudo y trató de pegar algunos sellos de nuevo; que no pudo recuperar todos los sellos pues el agua se los llevó y los que recogió los puso dentro de una caja de cartón; que dió cuenta al Juez de la Corte de Distrito de Arecibo de lo ocurrido y éste ordenó al fiscal que practicara una

investigación de los hechos, en la que él declaró lo ocurrido; que luego el juez le ordenó reponer los sellos en las escrituras pero debido a su situación económica no pudo hacerlo a pesar de haber gestionado un préstamo con el Colegio de Abogados.

El testigo Lic. Antonio E. Suliveres declaró que el querellado le había pedido permiso para dejar sus protocolos notariales en su oficina y él accedió siempre que los pusiera dentro de una caja; que a los dos o tres días el querellado se le presentó con unos protocolos mojados y una caja con sellos de rentas internas y le explicó lo que le había sucedido.

El Lic. E. Marín Marién declaró que un día del año 1939—no recuerda el mes—siendo él juez municipal, el querellado le informó que con motivo de unas lluvias torrenciales sus protocolos habían sufrido algo y él le dijo lo comunicara al juez de distrito; que recuerda que hubo un turbión, un temporal de agua dos o tres días antes.

Los Lics. Angel E. Franco y Gaspar Gerena Bras declararon que un mes antes de la vista de este caso fueron con el querellado a su casa en la carretera de Utuado a Arecibo; que vieron la canal en la parte posterior del techo y que le faltaba una tabla del seto.

El testigo Rafael Cortés declaró que el querellado le habló el 22 de noviembre de 1939 para que arreglara un *file* de acero; que lo vió sacar los protocolos y le dijo se los llevaba a su casa en el campo; que él se fué a su casa y como llovió mucho y creció el río no pudo volver hasta el segundo día; que cuando vino el querellado le dijo se había roto una canal, había entrado agua en su casa y se habían mojado los protocolos y que no arreglara el *file*.

Esa es toda la evidencia del caso.

Hemos examinado todos y cada uno de los protocolos notariales del querellado y es cierto que, por su estado y apariencia demuestran que se han mojado pues en algunas escrituras, no en todas, la tinta de las firmas de los otorgantes y del notario aparece corrida. Las encuadernaciones están en mal

estado y, además, se nota el sitio donde se han pegado algunos sellos nuevamente.

Por la apreciación que hacemos de toda la prueba presentada, somos de opinión que, aun aceptando como cierto el hecho de que, debido al agua que entró a la casa del querellado sus protocolos se mojaron, no es posible aceptar que ésa fuera la causa de que se despegaran todos los sellos de rentas internas que faltan en las escrituras. Como hemos dicho antes, hay señales inequívocas en un gran número de esas escrituras de que los sellos fueron arrancados según puede verse, entre otras, en las siguientes escrituras: números 3, 10, 14 y 40 del protocolo del año 1931; números 9, 28 y 44 del protocolo del año 1933; números 6, 7, 9, 12, 13, 26, 27, 28, 29, 30, 31, 34, 35, 37 y 42 del protocolo del año 1934.

Es significativo, además, el hecho de que hay protocolos, como el correspondiente al año 1931 en el que a todas las escrituras, excepto a la número 44 les faltan los sellos de rentas internas y sin embargo ese protocolo no aparece tan afectado por el agua como otros en que faltan menos sellos.

■ El querellado no tenía derecho a sacar sus protocolos notariales de su oficina en Utuado sin previa autorización judicial para llevarlos a una casa de maderas en malas condiciones en el campo, exponiéndolos a las inclemencias del mal tiempo que alega hubo la noche del 23 de noviembre de 1939. La sección 33 de la Ley Notarial vigente, o sea la ley para regular el ejercicio de la profesión notarial en Puerto Rico, aprobada el 8 de marzo de 1906 (Comp. 1979–2020), dispone que ''el protocolo no podrá ser extraído del edificio en que se custodie, a no ser por decreto judicial u orden de autoridad competente,'' habiendo violado por lo tanto el querellado dicha sección en relación con la sección 3ª. preceptiva de que los protocolos deben guardarse en cajas de acero o hierro cuando la oficina se halle instalada en casa de madera.

No estamos sin embargo, considerando el caso como uno administrativo por violación a los preceptos de la Ley Nota-

rial, pero hemos querido demostrar que aun la presunta defensa del querellado está viciada de ilegalidad y no tendría justificación alguna.

Vistos los casos *In re Rey González*, 56 D.P.R. 936; *In re Mas*, 56 D.P.R. 940 e *In re Rivera*, 56 D.P.R. 942, en los que este tribunal resolvió que el dejar un notario de fijar y cancelar los sellos de rentas internas a las escrituras públicas que otorga constituye causa suficiente para separarle del ejercicio de la profesión de abogado-notario, y habiéndose probado los hechos alegados por el fiscal, *procede dictarse sentencia declarando, como se declara, con lugar la petición, a cuyo fin se ordena que el querellado J. F. Figueroa Maestre cese inmediatamente y quede separado del ejercicio de la profesión de abogado-notario, que su nombre como tal abogado-notario sea borrado de los registros correspondientes obrantes en la Secretaría de este tribunal, y que dicha sentencia sea comunicada a los tribunales insulares así como al Tesorero y al Secretario Ejecutivo de Puerto Rico.*