In re Angel Arroyo Rivera, querellado.

Núm. 55.—*Sometido:* Mayo 4, 1944. *Resuelto:* Junio 12, 1944.

*Angel Arroyo Rivera, pro se, y Ricardo H. Blondet,* abogados del querellado; *R. A. Gómez, Fiscal del Tribunal Supremo y Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Angel Arroyo Rivera fué admitido a la práctica de la abogacía en 1913 y a la de notario público en 1918.[1] Al pre-

---

[1] Desde 1922 hasta el 1924 no actuó como notario por no haber prestado la correspondiente fianza.

sente no está actuando,como notario, toda vez que por reso-solución de la Corte de Distrito de San Juan de fecha 26 de mayo de 1941, entregó sus protocolos a dicha corte.

Como resultado de un informe de la corte de distrito a este tribunal, ordenamos al fiscal de esta corte que practicara una investigación de las actuaciones del querellado que se relatan más adelante. Una vez practicada dicha investigación el fiscal, de conformidad con nuestra resolución, radicó la presente querella de *disbarment*.

Los cargos contra el querellado, que se han probado a cabalidad, pueden dividirse en dos grupos. El primero consiste de continuas infracciones de su deber como notario en el otorgamiento de instrumentos notariales desde 1925 al 1940. Surge de la evidencia que con excepción de un año, tales sucesos tuvieron lugar todos los años a través de este período. El resultado final es que podría ponerse en tela de juicio la autenticidad de muchos instrumentos públicos otorgados por y autenticados ante el querellado como notario público. Sus actuaciones demuestran un descuido obstinado y una persistente indiferencia hacia sus delicados deberes a este respecto.

En algunas ocasiones dejó de estampar su sello notarial; en otras dejó de poner en las escrituras su rúbrica o signo, o ambos. En algunas escrituras no se mencionaron los testigos de las mismas; en otras los testigos no las firmaron. Había documentos con incongruencias entre el nombre de las partes en las escrituras y las firmas de las mismas. En dos escrituras el querellado afirmó que todos los concurrentes habían firmado, cuando la verdad fué que las partes otorgantes firmaron mediante un testigo, cosa que el querellado omitió manifestar. En algunas escrituras había borraduras e intercalaciones que no se "salvaron" al pie del documento, en cuanto a que se hicieron con la expresa aprobación de las partes y con las firmas de las personas que otorgaron los instrumentos, tal como dispone la ley. Asimismo hay un nú-

mero de irregularidades de menor importancia tales como el empleo de números para indicar cantidades y los números de las escrituras, en vez de escribirlos en letras; en un protocolo la nota de cierre no tenía fecha; en otro protocolo se decía que contenía 78 pliegos cuando sólo contenía 76 y el número cronológico de las escrituras era erróneo.

La mayor parte de los defectos arriba indicados han sido subsanados bien ante la corte de distrito o ante el fiscal de este tribunal durante el curso de las dos investigaciones en cuestión. Aun cuando admite los hechos alegados en esta primera serie de cargos, el querellado alega en sustancia (1) que no tenemos autoridad para desaforarlo por infracciones de la ley y por haber dejado de cumplir sus deberes como notario; y (2) toda vez que los defectos en las escrituras han sido subsanados, en manera alguna debe castigársele.

En cuanto a nuestra autoridad sobre este asunto, no hay duda en cuanto al poder inherente de este tribunal para desaforar o tomar cualquier otra medida disciplinaria contra los miembros del Foro de esta corte que incurran en serios incumplimientos de sus deberes como notarios. *In re Torregrosa,* 25 D.P.R. 637; *In re Figueroa Maestre,* 58 D.P.R. 483.

Alega también el querellado en su defensa el hecho de que sustancialmente todas las irregularidades aquí envueltas han sido subsanadas. Dicho argumento no debe alegarse como defensa total, sino en la esperanza de que se mitigue el castigo. Por las razones aquí expuestas, no podemos conceder al querellado la lenidad que solicita. Pero también queremos hacer constar bien claro que de cualquier modo el subsanar posteriormente tales irregularidades no puede nunca ser fundamento para eliminar retroactivamente las irregularidades de que se trata.

El segundo grupo de cargos es aún más serio. El querellado dejó de adherir en las escrituras otorgadas ante sí los correspondientes sellos de rentas internas requeridos por la ley, como sigue: en 1925, en doce escrituras, $16.25; en 1926,

en seis escrituras, $6.25; en 1927, en doce escrituras, $14.25; en 1928, en nueve escrituras, $21; en 1929, en siete escrituras, $8.25; en 1933, en ocho escrituras, $3; en 1934, en cinco escrituras, $1,75; en 1935, en tres escrituras, $1,25; en 1936, en siete escrituras, $7; en 1940, una escritura, 50 centavos y en 1939 y 1940 el querellado dejó de adherir a tres escrituras el sello expedido por el Colegio de Abogados de Puerto Rico, tal como lo exige la Ley núm. 170, Leyes de Puerto Rico de 1939 (pág. 863). Dejamos sin discutir algunas otras irregularidades en relación con sellos, aun cuando el querellado no las explicó satisfactoriamente, por considerarlas innecesarias para la resolución de este recurso.

La defensa del querellado en cuanto a esa segunda serie de cargos es que los sellos de rentas internas que faltaban fueron adheridos más tarde a los documentos en cuestión después de iniciarse las investigaciones; que la ley no dice cuándo deben adherirse dichos sellos; y que el único castigo que puede imponerse es una multa administrativa o algo por el estilo, que concebiblemente no podría imponérsele a él, toda vez que no puede convertirse a un notario en un cobrador del Tesorero. También alega pobreza extrema durante los años en que dejó de adherir los sellos en cuestión.

Ninguna de estas alegaciones tiene algo que ver con nuestra autoridad para disciplinar al aquí querellado. Hemos dicho que "las cortes conservan el poder inherente que a través de los siglos han tenido para separar del ejercicio de su profesión a aquellos abogados que a virtud de sus actuaciones hayan demostrado que son indignos de la confianza que en ellos se depositó . . . ".[2] Y esta corte ya ha resuelto "En . . . los casos *In re Rey González,* 56 D.P.R. 936; *In re Más,* 56 D.P.R. 940 e *In re Rivera,* 56 D.P.R. 942 . . . que el dejar un notario de fijar y cancelar los sellos de rentas internas a las escrituras públicas que otorga constituye causa suficiente para separarle del ejercicio de la profesión de abo-

[2]*In re Tormes,* 30 D.P.R. 267, 268.

gado-notario . . .''. (*In re Figueroa Maestre,* supra, a la pág. 489.)

Al alegar su insolvencia durante los años en cuestión, por inferencia admite el querellado que cobró el dinero de sus clientes para comprar los referidos sellos y lo usó para fines personales. Sin embargo, aun cuando no hubiere hecho esto, todavía es inexcusable su conducta. Y el hecho de que, una vez iniciadas las investigaciones, el querellado pudo tomar a préstamo suficiente dinero para comprar y adherir todos los sellos, en manera alguna lo disculpa de la irresponsabilidad profesional aquí imputada. Si así lo resolviéramos, ello equivaldría a burlarnos de las leyes aquí envueltas y de los deberes que recaen sobre los miembros de nuestro Foro.

El querellado fué una vez juez de distrito. Ha gozado de su título de abogado durante muchos años. Sus faltas no fueron esporádicas, sino que se repitieron en innumerables ocasiones a través de varios años. No hizo gestión alguna para corregir sus irregularidades hasta que la corte de distrito terminó la investigación de las mismas. Forzoso es concluir que el querellado a sabiendas y persistentemente ha actuado en forma tal que es imposible para nosotros resolver que podemos continuar confiando en que habrá de conducirse a tenor con los elevados postulados de conducta profesional exigidos por esta corte a los miembros de su Foro.

*Por las razones aquí expuestas se dictará resolución separando al querellado del ejercicio de la profesión de abogado-notario.*