ĺN RE GREGORIO LACOT SALGADO.

*Sometido:* Enero 9, 1952. *Resuelto:* Enero 31, 1952.

*Gregorio Lacot Salgado, pro se.*

*PER CURIAM:* En los informes escritos que en 28 de noviembre del pasado año nos rindió el Inspector de Protocolos residente en el distrito de San Juan, nombrado por nosotros de acuerdo con la autoridad otorgádanos por la Ley Notarial, según fué enmendada por la núm. 389 de 1951 ((1) pág. 957), nos indica, en relación con los protocolos del notario Gregorio Lacot Salgado, que en los de 1949 y 1950 ha notado las siguientes irregularidades:

*Protocolo del año 1949, que cubre 14 escrituras:*

(1) En la escritura número 1 no se expresa el nombre de la esposa del acreedor; y en la número 3 no comparece ni se expresa el nombre de la esposa del vendedor, y aunque hay una firma que aparentemente es de ésta, no se indica que ella es la esposa o que consiente a la enajenación, ni se dice cuáles son sus circunstancias personales.

(2) y (3) En la número 4 se han hecho enmiendas, correcciones y modificaciones que no han sido salvadas, ocurriendo lo mismo en la número 14. En ambas escrituras aparecen, además, espacios en blanco.

(4) La nota de cierre no figura a continuación de la última escritura.

(5) En las escrituras 2, 3, 4, 9 y 14 faltaban sellos de rentas internas por un valor total de $12.50.(¹)

*Protocolo del año 1950, que cubre 25 escrituras:*

(1) La nota de cierre del protocolo aparece en hoja separada y no a continuación de la última escritura, y la fecha de dicha nota, en cuanto concierne al día, está en guarismo solamente.

(2) En la escritura número 4 la otorgante Judita Osorio aparece poniendo una cruz y sus huellas, firmando a su ruego Enrique González, quien no figura como testigo; y no se hacen constar las circunstancias personales de esta otorgante, o que ella no sabe firmar, ni quién firma a su ruego.

---

(¹) Al calce del informe el Inspector hace constar que los sellos que faltaban en las anteriores escrituras fueron puestos y cancelados por el notario en su presencia.

En esa misma escritura uno de los otorgantes aparece firmando después de uno de los testigos, y Judita Osorio aparece al folio 17 como Judita Sierra.

(3) En la número 7 no aparece Carmen Rodríguez como compareciente y sin embargo aparece firmándola. En la número 9 el testigo Luis A. Font firma antes que el otorgante Enrique Bairán. En la número 18 el otorgante Zenón Delgado aparentemente no sabe firmar y ha puesto sus huellas, pero no aparece el testigo firmando a su ruego, ni se expresan tales circunstancias en la escritura. Tampoco hay antefirma de testigo alguno expresándolo así, y sus huellas no están acompañadas de iniciales de testigos. En la número 19 el otorgante Carlos Juan Berríos aparentemente no sabe firmar y no se expresa esta circunstancia por el notario, ni quién firma a su ruego, pero en el margen se dice "Testigo de las huellas y a ruego de Carlos Juan Berríos, quien dice no sabe firmar, Virgilio León." La frase "testigo de la marca" (sic) y la firma Virgilio León aparecen puestas en tipo de letra distinto al del resto; y aparecen sus huellas, más no sus iniciales. En la número 22, sin que lo exprese el notario, aparece firmando a ruego de América Rivera, el testigo Enrique González y aparecen al margen sus huellas.

(4) En el último folio de algunas escrituras faltan las iniciales de las partes o del testigo que firma a ruego de éstas.

(5) Hay enmiendas y correcciones que debieron ser salvadas en las escrituras números 1, 2, 5, 8 y 18.

(6) En la número 8, folio 40 se usan guarismos para expresar medidas y por estar enmendado el número no se puede determinar si dice 15 ó 16. En la número 20, folios 112 y 113, se usan guarismos solamente para expresar cantidades; y en la número 23 al folio 127 hay una entrelínea que dice "de mil ($1,000) dólares," fuera del margen inferior, sin salvar.

(7) Hay un índice numérico que no expresa los nombres de los otorgantes, no hay índice alfabético y no se han foliado documentos que se incorporan al protocolo.

(8) Faltan sellos de rentas internas en las escrituras números 3, 4, 5, 8, 9, 10, 11, 14, 17, 23, 24 y 25, por un valor total de $18.50. (²)

Recibidos los anteriores informes por nosotros, en 6 de diciembre del pasado año dictamos resolución ordenando que los mismos fueran notificados al notario Lacot Salgado y concediendo a éste un término de quince días para que expresara los motivos que tuviera por los cuales no debía ser corregido disciplinariamente. Compareció el notario por escrito dentro del término concedídole y en el mismo nos dice, en síntesis, lo siguiente:

(1) Admite que en la escritura número 1 no se expresa el nombre de la esposa del acreedor, pero alega que haciéndose constar expresamente que éste era casado y tratándose de un contrato de préstamo entiende que la comparecencia de la esposa era innecesaria.

(2) Admite que en la escritura número 3 no aparece compareciendo ni se expresa el nombre de la esposa del vendedor, pero que ello fué por involuntaria distracción. Alega, sin embargo, que esta laguna quedó salvada al aparecer ella firmando la escritura como uno de los otorgantes y al figurar sus iniciales en todos los folios, lo que, a su juicio, equivale a haber dado su consentimiento expreso en el contrato.

Admite que quedaron espacios en blanco en las escrituras mencionadas por el Inspector, pero entiende que tratándose de una lista de bienes muebles que estaban siendo hipotecados no era necesario cubrir dichos espacios. Anuncia al Tribunal que cumpliendo con los deseos del Inspector ha procedido a trazar las correspondientes líneas en dichos espacios.

(3) Admite que la nota de cierre no figura comenzando en la última página de la última escritura, pero entiende que esto no constituye violación a la Ley Notarial por cuanto dicha nota aparece en la última página del protocolo.

---

(²) Al igual que sucedió para el año 1949, al calce de su informe el Inspector nos indica que los sellos de rentas internas que faltaban en las aludidas escrituras del protocolo de 1950 fueron adheridos y cancelados en su presencia por el notario.

En cuanto a no haber salvado enmiendas y modificaciones, admite que ello es así, pero alega que fueron simplemente correcciones las que se hicieron, las cuales él entiende no había necesidad de salvar por ser las mismas sumamente claras.

(4) Admite que en el protocolo de 1949 faltaban sellos de rentas internas en las cantidades expresadas, pero alega que ello se debió a una involuntaria y errónea apreciación en la computación de los mismos y que tan pronto se aclararon las diferencias de computación procedió a cancelar los correspondientes sellos en presencia del Inspector.

En relación con el informe para el año 1950 manifiesta:

(1) Admite que la nota de cierre aparece en hoja separada, pero entiende que esto no constituye una violación a la ley notarial y que en las notas de apertura o cierre pueden usarse guarismos.

(2) Admite las observaciones contenidas en el párrafo segundo del Inspector, pero entiende que no existe irregularidad seria por cuanto al firmar Enrique González a ruego de Judita Osorio manifiesta que lo hace porque ésta no sabe firmar, apareciendo una cruz puesta por esta otorgante y. además sus huellas de ambos pulgares en todos y cada uno de los folios del documento, y que si bien es cierto que Enrique González no figura como testigo, aparecen, sin embargo, en dicho documento los dos testigos requeridos por la ley, entendiendo de la mayor buena fe que apareciendo tres testigos en vez de dos no se ha violado propiamente la ley notarial. Y que el hecho de aparecer en el folio 17 Judita Osorio como Judita Sierra fué meramente un error clerical; que Hortensio Gautier firmó después de la testigo Monserrate Monge debido a que aquél lo hizo rápidamente sin dar tiempo al notario a indicarle dónde debía hacerlo, y para que no quedase un espacio entre las firmas el notario le indicó a la testigo que procediese a firmar en el espacio indicado.

(3) Admite que en la escritura número 3 no comparece la esposa de uno de los otorgantes, pero ésta firma la escri-

tura e inicia todos y cada uno de los folios de la misma, demostrando con ello, a su juicio, conformidad con la transacción efectuada.

Admite que el testigo Font en la escritura número 9 aparece firmando antes que el compareciente Bairán, pero a su juicio esto no invalida el contrato ni constituye infracción a la ley notarial.

Acepta que en la escritura número 18 Zenón Delgado por no saber firmar estampa sus huellas digitales y que no se dice expresamente que un testigo firma a ruego de éste, pero que lo cierto es que así se hizo y por involuntaria distracción no hizo constar tal cosa en la escritura.

Que a las huellas digitales del otorgante no se acompañan las iniciales del testigo que firma a su ruego porque él entiende que lo único que la ley requiere son las huellas digitales del otorgante.

En la escritura número 19 admite que el otorgante Carlos Juan Berríos no sabe firmar y que esta circunstancia no se expresa, pero alega ello se debió al hecho de que tuvo conocimiento de tal incapacidad en el instante mismo en que estaban reunidos otorgantes y testigos y para salvarla Virgilio León firmó como testigo de la marca puesta por el otorgante, así como de las huellas estampadas. Y que el hecho de que la frase "testigo de la marca" y la firma de León aparezcan en tipo de letra distinto se debe a que tal frase fué puesta por el propio notario. Además, entiende que las iniciales del testigo no deben acompañar las huellas digitales del otorgante.

Acepta que Enrique González aparece firmando a ruego de América Rivera, sin que se expresara así, pero alega que la otorgante puso las huellas de sus dos pulgares en todos los folios del documento.

(4) No se ponen las iniciales de testigos que firman a ruego de otorgantes por entender que tal cosa no es necesaria; y que no aparecen las iniciales de los otorgantes en la última hoja de la escritura porque apareciendo sus firmas

completas considera enteramente innecesario el poner dichas iniciales en las últimas páginas.

(5) Admite que no hubo enmiendas sino correcciones en los folios y escrituras mencionadas en el párrafo quinto del informe, pero alega que las mismas eran de tal naturaleza que en nada afectaban el contenido del documento.

(6) Admite que al folio 40 de la escritura número 8 al usar guarismos para expresar medidas hay un número énmendado que hace difícil determinar si dice 15 ó 16, pero alega que apareciendo con claridad anteriormente la descripción del inmueble, este punto no afecta en nada el contrato ni da lugar a confusiones ni malas interpretaciones. Acepta que es cierto que en la escritura número 20 se usan guarismos solamente para expresar cantidades y que en la número 23 al folio 127 hay una expresión fuera del margen inferior, la cual no fué salvada, pero entiende que era tan clara la continuidad de la expresión en el documento que la salvedad era innecesaria.

(7) En relación con el párrafo 7 entiende que un índice alfabético no es necesario y cree que basta el índice numérico, donde se expresan los nombres de los otorgantes y los testigos, así como la clase de contrato celebrado. Entiende igualmente que los instrumentos que se incorporan al protocolo no deben foliarse, por cuanto están incorporados pero no forman parte de los referidos documentos.

(8) Admite que en las escrituras mencionadas bajo este apartado del informe faltaban los sellos mencionados por el Inspector, pero alega que ello se debió a una errónea computación, habiendo sido tales sellos adheridos inmediatamente en presencia del Inspector, conforme éste lo hace constar en su informe.

Finalmente manifiesta este notario que ha "tomado debida nota de todas y cada una de las observaciones hechas por el Inspector de Protocolos las cuales nos proponemos seguir en lo sucesivo al pie de la letra, admitiendo honradamente de la mayor y mejor buena fe el notario suscribiente no haber sido

todo lo celoso en relación con las observaciones apuntadas por el Inspector, velando éste porque la práctica notarial se ajuste lo más posible a las disposiciones expresas de nuestra ley notarial. Podrá observar este Honorable Tribunal, por las razones expuestas anteriormente, que las observaciones señaladas por el Inspector no constituyen serias irregularidades sino simplemente inadvertencias que en nada afectaron ni la validez de los documentos ni la contratación de las partes comparecientes."

██ Hemos vaciado en esta opinión casi al pie de la letra tanto las irregularidades que a juicio del Inspector de Protocolos del distrito de San Juan ha cometido este notario en los protocolos de los años 1949 y 1950, como las alegaciones que dicho notario hace en relación con las mismas, a fin de que se tenga un cuadro claro de la situación. Según el propio notario admite, él no ha sido todo lo celoso que ha debido en el ejercicio del notariado. Si las irregularidades por él cometidas afectan o no la validez de los documentos o la contratación en ellos celebrada, es cosa que no es necesario resolver por ahora. Mas la realidad es que se han infringido las secciones 14, 16, 17, 18, 19 y 30 de nuestra ley notarial y que aun aceptando como cierto cuanto el notario nos dice para justificar su inobservancia de la ley que rige la materia, prevalece el hecho de que tales irregularidades han sido cometidas y de que el mandato de la ley no se ha acatado.

No llegaremos al extremo de decir como en *In re Arroyo Rivera*, 63 D.P.R. 796 que "sus actuaciones demuestran un descuido obstinado y una persistente indiferencia hacia sus delicados deberes a este respecto", pero es innegable que el notario Lacot Salgado no ha desplegado el celo y cuidado que eran de esperarse de él en el ejercicio de tan difícil ministerio como el notariado. Siendo él, sin embargo, hombre joven que lleva poco tiempo en la práctica de la profesión—cuando comenzaron las irregularidades mencionadas hacía poco más de 3 años 4 meses que se le había admitido al ejercicio de la abogacía y poco más de 3 años que había prestado jura-

mento como notario—bastará decir que desaprobamos la manera en que ha ejercido el notariado y que de incurrir en nuevas irregularidades en el futuro, será castigado por nosotros en la forma provista por la sección 38 de la Ley Notarial.