La Jueza Asociada Señora Pabón Charneco
emitió la opinión del Tribunal.
Con el voto afirmativo de seis (6) miembros de este Tribunal, hoy invalidamos parte del proceder legislativo que instituyó nuevamente el requisito de colegiación obligatoria para la clase togada de Puerto Rico.(1) Mediante los casos de epígrafe este Tribunal está llamado a revisitar y, finalmente, disponer de una controversia que en los pasados años ha mantenido a la clase togada de Puerto Rico a la merced de la incertidumbre. Específicamente, la controversia de autos nos invita a ejercer nuestro Poder Inherente para reglamentar la profesión legal y, al amparo de este, determinar si asociarse a una entidad particular debe ser un requisito sine qua non para ejercer legítimamente la abogacía en Puerto Rico. Por los fundamentos que ex-pondremos a continuación, contestamos en la negativa.
Con nuestro proceder, tomamos el timón de la profesión legal y ponemos punto final al vaivén incierto en el que ha navegado la clase togada por demasiado tiempo. La decisión que hoy emitimos les garantiza tanto a aquellos letrados que elijan asociarse a una agrupación particular, como a aquellos que opten por no hacerlo, la libertad que como abogados están llamados a defender y que como ciudadanos, indiscutiblemente, merecen se les respete.
La verdadera y completa libertad yace en las fronteras de la relación simbiótica que la nutre: la autonomía de disfrutar de nuestra libertad individual y el deber de permitir que los demás disfruten de la suya. Como mínimo, este principio debería guiarnos al momento de ejercer nuestro Poder Inherente para regular la profesión legal y disponer de la controversia de autos. De lo contrario, nuestra función como máximos intérpretes de la Constitución de Puerto Rico no *796 sería más que la de un cuerpo inútil divagando en una idea vacía.
Con todo lo anterior en mente, pasemos a exponer los hechos que generaron la controversia de autos.(2)
I
El cuadro fáctico que dio génesis a la controversia que hoy estamos llamados a resolver se viene forjando desde el año 1932. Fue para esa fecha que mediante la Ley Núm. 43 de 14 de mayo de 1932 (4 LPRA see. 771 et seq.) se creó la entidad conocida como el Colegio de Abogados de Puerto Rico(3) (en adelante Colegio o Colegio de Abogados) y se instituyó la colegiación obligatoria como requisito para ejercer la abogacía en nuestra jurisdicción.(4) Es decir, para ejercer válidamente la profesión legal en Puerto Rico se impuso a los letrados la obligación de afiliarse al Colegio de Abogados. Además, la licencia de los abogados estaba supeditada al pago de aportaciones económicas obligatorias en concepto de cuotas profesionales al Colegio. De modo que un abogado no tenía otra opción que pertenecer al Colegio de Abogados, pues de lo contrario se enfrentaría a un proceso de desaforo que podía redundar en la pérdida de su único medio para sustentarse económicamente.
*797 Aproximadamente cinco (5) décadas más tarde, este Tribunal tuvo ante su consideración la controversia en cuanto a la constitucionalidad del sistema de colegiación obligatoria que había regido a la clase togada desde que se instituyó en el año 1932. En lo que comúnmente se conoce como la “litigación Schneider”(5) se cuestionó por primera vez en Puerto Rico el poder de la Asamblea Legislativa para imponer la colegiación obligatoria como requisito para ejercer la profesión legal en nuestra jurisdicción. En aquella ocasión, el Colegio de Abogados presentó Querellas contra noventa y nueve (99) letrados que incumplieron con el pago de la cuota anual que se había establecido conforme a la Ley Núm. 43. Los querellados alegaron, en síntesis, que la colegiación obligatoria y el pago de cuotas al Colegio eran inconstitucionales por infringir su derecho constitucional a la libre expresión y a la libertad de asociación. Como discutiremos más adelante, este Tribunal aceptó en ese momento la validez del requisito de colegiación obligatoria en Puerto Rico.
Luego de Col. de Abogados de P.R. v. Schneider, supra, y su progenie —litigación compleja que perduró por más de una década— en Puerto Rico imperó el statu quo de la colegiación obligatoria hasta el 2009. En ese año, la Asamblea Legislativa aprobó dos (2) proyectos de ley que subsiguientemente se convirtieron en la Ley Núm. 121-2009(6) y la Ley Núm. 135-2009.(7) Los referidos estatutos enmendaron la Ley Núm. 43 para, inter alia, establecer un sistema de colegiación voluntaria en nuestra jurisdicción.
*798 Por entender que estos estatutos eran inconstitucionales, el Colegio de Abogados acudió a los Tribunales de Puerto Rico para impugnar su validez. Luego de varias incidencias en los tribunales de menor jerarquía y por es-tar inconformes con una Sentencia dictada por el Tribunal de Apelaciones, el 12 de julio de 2010 el Colegio de Abogados presentó ante esta Curia un recurso de certiorari. No obstante, mediante Resolución emitida el 17 de marzo de 2011, una Mayoría de este Tribunal denegó expedir el recurso presentado por el Colegio. En aquella ocasión reiteramos el Poder Inherente' de este Tribunal para regular la profesión legal en Puerto Rico y establecimos que “[l]a variación de la colegiación —de obligatoria a voluntaria— no elimina el Colegio, no contradice ninguna pauta establecida en el ejercicio de nuestro rol como ente que reglamenta la profesión legal ni soslaya el axioma de la separación de poderes, base de nuestro sistema republicano de gobierno”. Col. de Abogados v. E.L.A., 181 DPR 135, 136 (2011), cert. denegado, Puerto Rico Bar Ass’n v. Commonwealth of Puerto Rico, 132 S.Ct. 1535 (2012). Asimismo, establecimos como argumento adicional que la “limitación significativa de la libertad a no asociarse es constitucional solamente si el Estado demuestra un interés gubernamental apremiante que la hace necesaria”. Id., pág. 137.
Aproximadamente cinco (5) años después de que los abogados en Puerto Rico adquirieran la libertad de elegir asociarse a cualquier entidad o a ninguna, y a pesar de lo intimado por una Mayoría de esta Curia en la Resolución emitida en el caso Col. de Abogados v. E.L.A., supra, los cuerpos legislativos optaron por aprobar el P. de la C. 1366. Con el aval del actual Gobernador de Puerto Rico, el 28 de julio de 2014 ese proyecto se convirtió en la Ley Núm. 109-2014. Inter alia, y en extrema síntesis, la Ley Núm. 109-2014 derogó la Ley Núm. 121-2009 y la Ley Núm. 135-2009, y reinstaló el sistema de colegiación obligatoria como *799 requisito para que los miembros de la clase togada puedan ejercer válidamente la profesión legal en Puerto Rico.
El mismo día en que se aprobó el referido estatuto, el Ledo. Thomas Rivera Schatz presentó ante el Tribunal de Primera Instancia, Sala de San Juan, una Demanda contra el Gobierno de Puerto Rico y el Colegio de Abogados. En esta solicitó que se declarara la inconstitucionalidad de la Ley Núm. 109-2014. Adujo, en esencia, que ese estatuto infringe su derecho constitucional a la libertad de asociación y expresión. Además, argüyó que esta ley contraviene el Principio de Separación de Poderes, ya que usurpó la facultad inherente de este Tribunal para reglamentar la profesión legal. Luego de presentar su reclamo ante el foro primario, el licenciado Rivera Schatz presentó ante esta Curia un Recurso de Certificación Intrajurisdiccional(8) y una Moción Urgente para que se Paralicen los Procedimientos en el Tribunal de Primera Instancia al Amparo de la Regla 28(A) del Reglamento del Tribunal Supremo. Mediante una Resolución emitida el 30 de julio de 2014, expedimos el auto solicitado y paralizamos los efectos del estatuto impugnado.(9)
De igual modo, el 29 de julio de 2014 la Asociación de Abogados de Puerto Rico y los licenciados Héctor Ramos Díaz y Rafael Sánchez Hernández presentaron en el Tribunal de Primera Instancia, Sala de San Juan, otra Demanda contra el Gobierno de Puerto Rico y el Colegio de Abogados. En esta solicitaron igualmente que se declarara la inconstitucionalidad de la Ley Núm. 109-2014. En apoyo de su petitorio esbozaron esencialmente los mismos argumentos vertidos por el licenciado Rivera Schatz en su Demanda. Al día siguiente estos acudieron ante nos mediante un Recurso de Certificación Intrajurisdiccional. Evaluado el mismo, el 1 de agosto de 2014 expedimos el *800 recurso de certificación presentado y lo consolidamos con el caso CT-2014-8.
En el ínterin se presentaron varias solicitudes de intervención por parte de varios abogados y abogadas, las cuales fueron declaradas “con lugar” luego de que estos subsanaran unas deficiencias señaladas por este Tribunal debido al incumplimiento con la Regla 21.4 de Procedimiento Civil de 2009 (32 LPRA Ap. V). Las partes interventoras en este caso son las siguientes: Carlos Rivera Justiniano, Carlos Pérez Toro, Juan M. Gaud Pacheco, Félix Colón Serrano, María Fullana Hernández, Carmelo Ríos Santiago, Miguel Romero Lugo, Mario Santurio González, Carlos Sagardía Abreu, Luis Dávila Colón, José Meléndez Ortiz, Valerie Rodríguez Erazo, Elias Sánchez Sifonte y Evelyn Aimée De Jesús Rodríguez.
A su vez, los licenciados John E. Mudd y John A. Stewart presentaron una Demanda el 28 de julio de 2014 en la cual también cuestionaron la constitucionalidad de la Ley Núm. 109-2014. Posteriormente, el 8 de agosto de 2014 estos comparecieron ante nos mediante un Recurso de Certificación Intrajurisdiccional. Por su estrecha relación, el 12 de agosto de 2014 expedimos el auto y ordenamos su consolidación con los demás casos certificados.(10)
Por otro lado, ante el interés público de la controversia involucrada en los casos de autos, hemos contado con la participación en calidad de amici curiae del Colegio de Tecnólogos Médicos de Puerto Rico, el Consejo Interdisciplinario de Colegios y Asociaciones Profesionales, el Colegio de Profesionales del Trabajo Social, Servicios Legales de Puerto Rico, Inc. y Pro Bono, Inc.
Tras concluir el trámite ordenado por este Tribunal, en los casos de autos se presentaron las alegaciones y sus correspondientes alegaciones responsivas. Aunque las partes recurridas aceptaron algunos hechos y negaron otros, no *801 existe controversia en cuanto a los tres (3) hechos materiales que son necesarios para resolver la controversia de autos. Estos son: (1) que al aprobarse la Ley Núm. 109-2014 se incluyeron varias disposiciones que exigen que para practicar la profesión legal en Puerto Rico todos los abogados deben afiliarse al Colegio de Abogados y Abogadas de Puerto Rico; (2) que todos los peticionarios y las partes interventoras son abogados admitidos a la profesión en Puerto Rico y (3) que estos han declarado, por distintas razones, que no desean afiliarse al Colegio de Abogados.
Ante estos hechos materiales que no están en controversia y con el beneficio de la comparecencia de las partes, los interventores y los amici curiae, estamos en posición de resolver sin ulterior trámite la controversia antes descrita.
II
La médula de la controversia que nos corresponde resolver se reduce a examinar si el sistema de colegiación obligatoria es compatible con lo que esta Curia, al amparo de nuestro Poder Inherente para reglamentar la profesión legal, entiende debe ser un requisito para que los abogados ejerzan legítimamente su profesión en Puerto Rico. Para contestar esta interrogante debemos examinar, inter alia, la Doctrina de Separación de Poderes, base sobre la cual se edifica nuestro poder para regular la abogacía en sus variados aspectos.
Recientemente este Tribunal hizo un recuento extenso sobre la preeminencia de la Doctrina de Separación de Poderes en nuestro ordenamiento Constitucional. Véase AAR, Ex parte, 187 DPR 835 (2013). En aquella ocasión, profundizamos en cuanto a “los fundamentos de esa doctrina y vimos cómo esta es parte intrínseca de nuestro ordenamiento constitucional, siendo vehículo para garantizar la libertad de los ciudadanos en un sistema democrático como el nuestro”. Alvarado Pacheco y otros v. *802 ELA, 188 DPR 594, 628 (2013) (Voto particular de conformidad de Pabón Charneco, J., refiriéndose a AAR, Ex parte, supra).
En esencia, la Doctrina de Separación de Poderes aspira a establecer las responsabilidades y enmarcar el ámbito de acción de las ramas constitucionales de gobierno. AAR, Ex parte, supra, pág. 851. No obstante, el modelo de división de poderes en tres (3) ramas no pretende delimitar de forma absoluta e inflexible el ámbito de poder que le corresponde a cada una de estas. Id., pág. 852. Véase, además, Misión Ind. P.R. v. J.P., 146 DPR 64, 89 (1998). A contrario sensu, procura funcionar como un sistema de pesos y contrapesos mediante el cual las tres (3) ramas ostentan algún grado de poder compartido que al mismo tiempo opera como freno para evitar una acumulación desmedida de poder en una sola rama. ARR, Ex parte, supra, págs. 852-853. Véanse, además: Colón Cortés v. Pesquera, 150 DPR 724, 752 (2000); Hernández Agosto v. Romero Barceló, 112 DPR 407, 427-428 (1982). De esa manera se evita que se abran las compuertas para que una de estas asuma demasiado poder como para dominar a las demás.
Así pues, inspirada por este modelo de gobierno apadrinado por los estados de la Nación,(11) nuestra Carta Magna dispone que el Poder Judicial se ejercerá por este Tribunal Supremo. Const. PR; Art. V, Secs. 1 y 2, LPRA, Tomo 1. Véase, además, In re Aprob. Rs. y Com. Esp. Ind., 184 DPR 575 (2012). Esto implica que la función judicial solamente puede ejercerse por esta Rama y aquellas funciones no judiciales corresponden a los restantes dos (2) poderes constitucionales. Colón Cortés v. Pesquera, supra, pág. 752.
Como corolario de este principio, desde hace más de un siglo este Tribunal ha reclamado enérgicamente su facul *803 tad inherente para reglamentar y custodiar los linderos de la profesión legal. Ello debido, primordialmente, a la función inminentemente social que realizan los ciudadanos que escogen ejercer la abogacía en Puerto Rico.(12) Como bien ha señalado esta Curia, la “misión [de los abogados] en la sociedad es altamente noble, pues están llamados a auxiliar a la recta administración de la justicia. En ellos confían, no sólo las partes interesadas sino las cortes mismas”. In re Díaz, 16 DPR 82, 92 (1910).(13)
Como se puede apreciar, desde hace más de un siglo este Tribunal ya había reconocido que la profesión legal estaba inexorablemente enlazada a la función judicial. Por consiguiente, los ciudadanos que escogen ejercer esta profesión también lo están debido a que al momento de prestar su juramento se convierten en funcionarios del Tribunal.(14) En cuanto a este particular es importante revivir por su invaluable pertinencia las expresiones siguientes:
[...] la facultad de admisión de aspirantes al ejercicio de la abogacía, es más de poder judicial que de ningún otro poder. Indudablemente, si los abogados son funcionarios de los tribunales, y tienen en ellos y ante ellos la misión de auxiliar la administración de justicia, si ellos cooperan con los tribunales en el ejercicio de un poder tan sagrado, y si ellos se encuentran, por virtud de las disposiciones de la ley, fundada en la práctica sana, justa, lógica y constante, bajo la inspección de esos mismos tribunales, a éstos, antes que a ningún otro poder, corresponde la facultad de admitir o no a los que preten *804 den ser sus auxiliares y cooperadores en la más alta misión que puede encomendarse a un hombre o a un conjunto de hombres. (Énfasis nuestro). Boneta, Ex parte, 39 DPR 154, 165-166 (1929).
Luego de aprobada nuestra lex superior en 1952, podemos afirmar que el reconocimiento por este Tribunal de los letrados como una extensión vital de la Rama Judicial en la administración de la justicia sigue gozando de la misma eficacia. Como hemos señalado, la Constitución de Puerto Rico confiere a este Tribunal la facultad para administrar el sistema de justicia. Por consiguiente, si los letrados son funcionarios del Tribunal y, por ende, copartícipes del Tribunal en el ejercicio del Poder Judicial, corresponde a este Foro velar por que estos posean y mantengan las cualidades necesarias para llevar a cabo tan importante función. De igual manera, le corresponde a este Tribunal, en el sano ejercicio de su discreción, establecer los requisitos que estos deben cumplir para ser merecedores de ingresar al Foro.
El entendido básico de que la reglamentación y supervisión de sus funcionarios recae sobre la Rama Judicial se remonta a la época de la colonización española. Véase G. Figueroa Prieto, Propuesta para la reglamentación de la conducta profesional en Puerto Rico, 81 Rev. Jur. UPR 1, 3 (2012). Naturalmente, y como resultado de esa situación colonial, distintos estatutos españoles relacionados al campo de la abogacía se extendieron a los letrados en Puerto Rico. Id. Una de estas piezas legislativas fue la Novísima Recopilación de 1805, mediante la cual se les exigió a los abogados de Puerto Rico matricularse en los tribunales, adoptándose con ello el modelo judicial para la reglamentación de la abogacía. Id. Ese modelo presupone que por ser los abogados funcionarios del tribunal, estos deben estar reglamentados por la Rama Judicial. Id. Esta prerrogativa le corresponde exclusivamente al Tribunal de mayor jerarquía en la jurisdicción de la cual se trate. Id., pág. 5. Siguiendo esta línea de pensamiento, desde sus inicios *805 este Tribunal acudió a su Poder Inherente como fundamento para resolver asuntos disciplinarios. En In re Abella, 14 DPR 748, 751 (1908), expresamos lo siguiente:
[P]ara ser cualquier persona admitida al ejercicio de la profesión de abogado ante el Tribunal Supremo y demás tribunales de Puerto Rico, entre otras condiciones es indispensable que sea de buen carácter moral, de modo que si esta condición llegara a faltar, faltaría una de las bases sobre que descansa la admisión al ejercicio de la profesión de abogado, y esta Corte Suprema que acordó tal prerrogativa tendría indudablemente la facultad de retirarla. (Enfasis nuestro).
Vemos entonces que desde muy temprano esta Curia entendió que su Poder Inherente para reglamentar la profesión legal era amplio. De modo que, si ostentaba el poder para establecer los requisitos para admitir abogados al ejercicio de la abogacía, naturalmente gozaba de igual poder para disciplinarlos y desaforarlos cuando estos dejaban de poseer las cualidades que les hicieron merecedores de entrar al Foro.(15)
Ya para mediados del siglo xix el Tribunal Supremo de Estados Unidos había incorporado por fíat judicial la doctrina de Poder Inherente como fundamento para investirse como el ente encargado de reglamentar la práctica de la abogacía. Véase Figueroa Prieto, supra, pág. 6. Véase, además, Ex parte Secombe, 60 US 9 (1856).(16) Sin duda, la relación política entre Puerto Rico y Estados Unidos llevó a que para principios del siglo xx este Tribunal incorporara formalmente a su acervo jurídico la doctrina de Poder Inherente anunciada años antes en la jurisprudencia de la *806 Nación. Véase Figueroa Prieto, supra, pág. 6. Como hemos visto, históricamente este Tribunal siempre se ha caracterizado por seguir un modelo judicial vis a vis un modelo legislativo para la reglamentación de la abogacía. Id., pág. 17. Vimos, además, cómo el desarrollo de esta facultad ha sido influenciada por las relaciones políticas que ha tenido Puerto Rico tanto con España como con Estados Unidos.
Ese cardinal llamado que cimienta la facultad inherente de este Tribunal para reglamentar la profesión legal ha resonado por décadas en el razonamiento de este Foro. Según comenta el Prof. Guillermo Figueroa Prieto en su Artículo:
Dicha doctrina se ha justificado como consecuencia de la separación de poderes. Expone tal doctrina que corresponde al Poder Judicial reglamentar la abogacía comenzando con la admisión de abogados a la práctica del derecho y concluyendo con la disciplina y separación de abogados. Así, bajo la doctrina del poder inherente los tribunales han reclamado autoridad para adoptar códigos o reglas de conducta profesional, para admitir abogados a la práctica, para disciplinar y desaforar abogados, para definir lo que constituye práctica de la abogacía, para ordenar que la colegiación de abogados sea compulsoria, para imponer cuotas a los abogados admitidos, para reglamentar el comportamiento de jueces y para aprobar códigos o reglas de conducta judicial. Figueroa Prieto, supra, págs. 6-7.
A poco de examinar los tomos de Decisiones de Puerto Rico podemos constatar cómo consistentemente hemos reclamado que somos el ente que ostenta la facultad inherente para reglamentar la profesión legal en nuestra jurisdicción. Véanse: In re Doitteau Cruz, 190 DPR 979 (2014); In re Martínez Maldonado, 185 DPR 1085, 1087 (2012); In re Reichard Hernández, 180 DPR 604 (2011); In re Morell Corrada, 171 DPR 327, 330 (2007); In re González Díaz, 163 DPR 648 (2005); In re Benítez Echevarría, 128 DPR 176, 176-177 (1991); In re Delgado, 120 DPR 518, 527 (1988).
*807 De igual forma, hemos reiterado en innumerables ocasiones que la remoción, al igual que la admisión al ejercicio de la abogacía, es una función inherente de la Rama Judicial que corresponde única y exclusivamente a este Foro como Tribunal de mayor jerarquía en nuestra jurisdicción. Véanse: In re Carrasquillo Ortiz, 163 DPR 589, 592 (2004); In re Peña Peña, 153 DPR 642, 649 (2001); Metrop. de Préstamos v. López de Victoria, 141 DPR 844 (1996); In re Liceaga, 82 DPR 252, 255 (1961).(17)
No obstante, en pleno conocimiento de los límites de nuestro poder, y respetando los poderes que nuestra Constitución le ha conferido a la Rama Legislativa,(18) este Tribunal ha reconocido la facultad de la Asamblea Legislativa para legislar asuntos que incidan en este campo.(19) Empero, hemos enfatizado que toda legislación dirigida a reglamentar de cualquier modo la profesión legal es puramente directiva y no mandatoria. Véanse: In re Fund. Fac. Der. E. Ma. De Hostos II, 150 DPR 508, 512 (2000) (Resolución); López Santiago, Ex parte, 147 DPR 909, 912 (1999); Colegio de Abogados de P.R. v. Schneider, supra, pág. 546; In re Liceaga, supra; In re Pagán, 71 DPR 761, 763 (1950); In re González Blanes, 65 DPR 381, 391 (1945); In re Bosch, 65 DPR 248, 251 (1945); Ex parte Jiménez, 55 DPR 54 (1939); In re Abella, supra.
Además, y particularmente pertinente a la controversia ante nuestra consideración, hemos expresado inequívocamente que
*808 [l]a preeminencia de la acción judicial en este campo, el cual incluye naturalmente la facultad de pasar juicio sobre si debe unificarse o no el foro en una jurisdicción y bajo qué condiciones, no significa que la legislación sobre estos particulares que no conflija con las pautas que este Tribunal establezca sea nula. Colegio de Abogados de P.R. v. Schneider, supra, pág. 546.
Así pues, de la misma manera como hemos reconocido la validez de estatutos aprobados para auxiliarnos en el ejercicio de nuestro Poder Inherente, hemos invalidado con igual firmeza legislación que tiene el efecto de privar o menoscabar dicho poder. Véase, por ejemplo, In re Dubón Otero, 153 DPR 829, 859 (2001), Voto particular de conformidad, Rivera Pérez, J., refiriéndose a In re González Blanes, supra.
En cuanto a este particular, Figueroa Prieto especifica que esta Curia
[...] se hizo eco de la doctrina estadounidense que sostiene que aunque reconoce que el poder sobre la práctica de la abogacía pertenece a la Rama Judicial, incluyendo el poder para admitir y disciplinar abogados, el Poder Legislativo puede legislar de manera complementaria sobre la abogacía. De esa forma, el Tribunal Supremo se reservará la potestad de decidir cuál legislación acepta como complementaria a su poder de reglamentación y cuál legislación rechaza por considerarla usurpadora de su facultad para reglamentar la abogacía. (Enfasis nuestro). Figueroa Prieto, supra, pág. 6.
De esta manera se logra un balance adecuado respetando el poder para legislar que compete exclusivamente a la Rama Legislativa sin subvertir el Poder Inherente para reglamentar la abogacía que, como corolario de la Doctrina de Separación de Poderes, le pertenece a la Rama Judicial. Todo lo anteriormente discutido ha sido el modelo que ha imperado en nuestra jurisdicción por más de cien (100) años.
*809 h-H HH
Por otro lado, y por considerarlo como un elemento importante al momento de ejercer nuestro Poder Inherente para regular la profesión legal, no podemos disponer de la controversia de autos sin antes discutir las implicaciones de índole constitucional que surgen al obligar a un grupo de profesionales sui géneris —como lo es la clase togada— a asociarse a una entidad particular para ejercer legítimamente su profesión. Ello teniendo presente que, independientemente de los argumentos constitucionales presentes en este caso, la integración del foro es un asunto que se enmarca dentro del ejercicio de nuestro Poder Inherente para regular la profesión legal.
En esta coyuntura, declaramos que nuestro análisis en este acápite se limitará a discutir el derecho a la libertad de asociación según quedó consagrado específicamente en la Constitución de Puerto Rico. Es decir, nuestra decisión constituye un “fundamento estatal adecuado e independiente” para disponer del caso de autos. Véanse: Michigan v. Long, 463 US 1032 (1983); A. García Padilla y J.J. Álvarez González, El Tribunal Supremo de Puerto Rico: la Corte Pons, 59 (Núm. 2) Rev. Jur. UPR 185, 192 esc. 22 (1990).(20)
A. Por ser nuestra Carta Magna un documento relativamente reciente, durante el proceso de la Convención Constituyente esta se nutrió de documentos constitucionales que la precedieron y de las ideas liberales-demo *810 oráticas que imperaban en distintas comunidades políticas al momento de su redacción.(21) Un ejemplo de ello es el derecho a la libertad de asociación que, contrario a la Constitución de Estados Unidos, se reconoce explícitamente en la Carta de Derechos de nuestra Constitución. Esta dispone en su Sección 6 que "[l]as personas podrán asociarse y organizarse libremente para cualquier fin lícito, salvo en organizaciones militares o cuasi militares”. Art. II, Sec. 6, Const. PR, LPRA, Tomo 1, ed. 2008, pág. 294.
Realizar un análisis constitucional concienzudo es un ejercicio holístico que conlleva analizar aquellos factores que inspiraron a los constituyentes en la redacción de las distintas cláusulas contenidas en nuestra Constitución. No es suficiente mirar ese texto en el vacío. Por ello, a continuación examinaremos brevemente el historial y los variados factores que inspiraron a los constituyentes a incluir esta disposición constitucional en nuestra Carta Magna.
B. A poco de examinar el proceso de redacción de nuestra Constitución podemos constatar la preeminencia que los constituyentes le quisieron impartir al derecho a la libertad de asociación en nuestro ordenamiento constitucional. Por entender que la garantía de ese derecho era un principio fundamental de la libertad humana, y por lo tanto inherente a la democracia,(22) la Escuela de Administración Pública recomendó hacerlo constar explícitamente en nuestro documento Constitucional: “[l]a Constitución de Puerto Rico debe hacer explícita esta garantía de libertad de asociación *811 [...] y que, independientemente, es uno de los aspectos más importantes de la democracia”.(23)
Por otro lado, se reconoció este derecho en un plano distinto a aquel consagrado en la Constitución de Estados Unidos. Las expresiones del delegado Jaime Benitez al presentar el Informe de la Comisión de la Carta de Derechos a la Convención claramente evidencian lo anterior. A esos efectos, el delegado expresó que el derecho de asociación propuesto “pasa[ba] a incorporar un nuevo aspecto del derecho y de la libertad, y que no aparece tradicionalmente en las constituciones clásicas, el que se refiere al derecho de libre asociación y libre organización”.(24) De lo anterior podemos colegir que la intención de los constituyentes fue reconocer una especie de derecho distinto a aquel reconocido bajo la Constitución de Estados Unidos.
Además, no podemos abstraer de nuestro análisis el hecho de que la Declaración Universal de Derechos Humanos de las Naciones Unidas fue eje de inspiración en la redacción de nuestra Carta de Derechos.(25) Con relación al derecho de asociación, ese documento dispone que “[t]oda persona tiene derecho a la libertad de reunión y de asociación pacíficas” y “[n]adie podrá ser obligado a pertenecer a una asociación”,(26) Vemos entonces que al reconocer la vertiente negativa de este derecho tan fundamental, este se concibió en su aspecto más amplio. Esta fuente que inspiró la redacción de nuestra Carta Magna nos lleva a concluir que nuestros constituyentes, que como vimos quisieron impartirle mayor amplitud a este derecho que aquel reconocido en la esfera federal, tenían claro que el derecho a la *812 libre asociación necesariamente presupone el derecho de las personas a no asociarse. Véase Colegio de Abogados de P.R. v. Schneider, supra, pág. 549.
C. Han sido escasas las ocasiones en las cuales se han presentado ante este Foro controversias enmarcadas exclusivamente dentro del derecho a la libre asociación.(27) No obstante, en Colegio de Abogados de P.R. v. Schneider, supra, este Tribunal tuvo ante sí una controversia de esta naturaleza. En aquella ocasión este Foro resolvió que la Asamblea Legislativa podía legislar válidamente para exigir a los abogados pertenecer a una agrupación particular como requisito para ejercer su profesión. Además, reiteramos que el poder para regular la profesión legal es inherente de esta Curia. No obstante, aclaramos que si bien la Asamblea Legislativa puede aprobar legislación en este campo, ello no va por encima del principio constitucional que establece que el Poder Judicial se ejercerá por este Tribunal Supremo. Como consecuencia, recaerá exclusivamente sobre este Foro la facultad de aceptar tal legislación como complementaria a nuestro Poder Inherente, o rechazarla de plano.
En Colegio de Abogados de P.R. v. Schneider, supra, este Tribunal, por voz del entonces Juez Presidente Señor Trías Monge, se aferró a lo anterior para avalar el sistema de colegiación obligatoria establecido mediante la Ley Núm. 43. No obstante, claudicó ante la oportunidad histórica de atender adecuadamente el planteamiento constitucional vertido por los recurridos. Mediante un análisis somero, el Juez Presidente Señor Trías Monge, en un leve intento de atender el argumento de derecho de asociación presentado por los letrados que cuestionaron la validez constitucional de la colegiación obligatoria, expresó lo siguiente:
Los intereses públicos en la creación de una sociedad vigorosamente pluralista, en el mejoramiento de la abogacía y en *813 la buena marcha del sistema judicial pesan decididamente más que las inconveniencias personales que pueda acarrear en ciertos casos la colegiación obligatoria. El derecho a la no asociación, derivable del derecho contrario consagrado en la Constitución del Estado Libre Asociado, Art. II, Sec. 6, cede ante los intereses señalados, de naturaleza claramente imperiosa bajo la constitución puertorriqueña. Colegio de Abogados de P.R. v. Schneider, supra, pág. 549.(28)
Pasando por alto lo problemático que resulta que este Tribunal se haya referido a un reclamo de derechos civiles como una mera “inconveniencia personal”, es menester mencionar que en Colegio de Abogados de P.R. v. Schneider, supra, este Tribunal falló en articular un estándar específico para analizar controversias de derecho de asociación.
Debido a esa omisión, en Col. de Abogados v. E.L.A., supra, pág. 117, establecimos por primera vez que una “limitación significativa de la libertad a no asociarse es constitucional solamente si el Estado demuestra un interés gubernamental apremiante que la hace necesaria”. Es decir, cuando con su proceder el Estado menoscaba un derecho fundamental este tiene que articular la existencia de un interés apremiante que justifique la necesidad de su actuación.(29) Además, tal como hemos reconocido con otros derechos fundamentales, será necesario que el Estado demuestre que no tenía a su alcance medidas menos onerosas que la legislada para lograr el interés articulado.(30) Solo de esa manera se protege adecuadamente un derecho tan fun *814 damental como el de la libertad de asociación. Además, y conforme al historial que hemos discutido, respetamos la preeminencia que los constituyentes quisieron impartir a este derecho al reconocerlo explícitamente en nuestro documento constitucional.
D. En el contexto de la Ley Núm. 109-2014, la propia Asamblea Legislativa reconoció que toda legislación que menoscabe la libertad de asociación en este asunto está supeditada a un escrutinio estricto por este Tribunal. No hay más que revisar la Exposición de Motivos de la ley para constatar lo anterior. En esta el Estado articuló tener un interés apremiante para legislar en este campo y a esos efectos expuso lo siguiente:
[E]ntendemos que existe un interés apremiante que tiene que ser protegido por esta Asamblea Legislativa el cual consiste en que todas las personas que practiquen la profesión legal en el Estado Libre Asociado de Puerto Rico pertenezcan a un colegio integrado de abogados y abogadas que represente una garantía para la ciudadanía de tener acceso a una representación legal digna, capacitada, íntegra y diligente. Exposición de Motivos de la Ley Núm. 109-2014, pág. 3.
Sin embargo, escribir una oración y añadirle la palabra “apremiante” es sencillo, pero insuficiente para sobrevivir un estándar de escrutinio estricto. Lamentablemente, el interés apremiante articulado por el Estado en este caso peca de lo anterior. Cuando vamos a la médula del interés estatal articulado en este caso para justificar la necesidad de la colegiación obligatoria de los abogados podemos constatar sin ambages que se trata de expresiones legislativas abstractas y especulativas. Además, conforman una falacia imperecedera, típica de los argumentos circulares. Esto, ya que lo que se propone lograr con la legislación a su vez se ofrece como el interés apremiante del Estado.
Sin embargo, nuestro análisis no termina aquí. Según hemos mencionado, el estándar adecuado para analizar controversias que involucren el derecho fundamental a la *815 libre asociación no solo exige que la acción estatal persiga un interés apremiante, sino que además el Estado demuestre que no existen medidas menos onerosas para proteger ese interés. Aun si se estipulara en este caso que el Estado persigue un interés apremiante con la colegiación obligatoria, este falló en cumplir con la segunda parte del escrutinio antes discutido.
Ello se debe a que tras examinar detenidamente el historial legislativo de la Ley Núm. 109-2014 no hallamos ex-presión alguna por parte de la Asamblea Legislativa dirigida a tan siquiera explorar la existencia de medidas menos onerosas para lograr el interés articulado. De hecho, en su alegato el Estado acude —al igual que la Asamblea Legislativa— a un argumento patentemente circular y a esos efectos expresa que:
[A] poco que se profundice en el asunto, este Honorable Tribunal constatará que ni siquiera existen medidas alternas para lograr el fin que promueve la ley, pues no hay otra manera de lograr la unificación e integración absoluta del foro. La colegiación compulsoria es el único mecanismo que viabiliza dicho cometido, con todas las ventajas que ello supone para la profesión legal y para la ciudadanía en general. (Énfasis suprimido). Alegato del Estado Libre Asociado de Puerto Rico en solicitud de desestimación de las demandas consolidadas de epígrafe de 11 de agosto de 2014, pág. 29.
Esta aseveración es totalmente ilógica. Sería un absurdo jurídico avalar que el interés apremiante articulado por el Estado sea a su vez la medida menos onerosa para lograr el fin que persigue. Es decir, lo que propone el Estado es que el fin es, a su vez, el medio. Ello constituye un evidente non sequitur.
Sin duda, y conforme a todo lo anteriormente discutido, la Ley Núm. 109-2014 afecta sustancialmente el derecho de asociación de los abogados en Puerto Rico y el Estado no cumplió con el estándar aplicable para menoscabar ese derecho.
*816 IV
A. Con todo lo anteriormente discutido en mente, debemos decidir entonces si la Ley Núm. 109-2014 es válida a la luz de nuestro Poder Inherente para reglamentar la profesión legal. Para ello, debemos determinar si aceptamos esa legislación como un esfuerzo complementario a nuestro Poder Inherente o si, a contrario sensu, la ley menoscaba fatalmente esa facultad.
Como hemos discutido, y a manera de repaso, desde sus inicios este Tribunal ha reiterado que ostenta el Poder Inherente para reglamentar la profesión en sus distintos aspectos. Por décadas esa facultad ha representado un principio incuestionable que se encuentra firmemente asentado en el acervo jurisprudencial de este Foro.
Por otro lado, vimos cómo ese poder proviene y se nutre de la naturaleza misma del sistema de Separación de Poderes que en su misión de delinear “esas fronteras invisibles pero poderosas”(31) dispone que será el Poder Judicial el ente encargado de administrar el sistema judicial en Puerto Rico. Como consecuencia de este mandato constitucional, este Foro ha reclamado ostentar el Poder Inherente para reglamentar la profesión legal y, por consiguiente, a los abogados por ser estos funcionarios del Tribunal.
Finalmente, vimos cómo en nuestra jurisdicción impera un modelo judicial de reglamentación, lo que implica que la facultad para reglamentar la profesión legal recae exclusivamente en este Tribunal Supremo. De modo que cualquier ley aprobada para legislar en este campo es puramente directiva y no mandatoria para este Tribunal. Con todo lo anteriormente discutido presente, pasamos a resolver.
B. In limine, es importante destacar que los abogados son un grupo de profesionales sui géneris que, con *817 trario a otros grupos profesionales, están fiscalizados por un ente permanente que los regula de manera independiente a cualquier grupo profesional o colegio. En el caso de la profesión legal es este Tribunal el ente regulador que por mandato constitucional ostenta el poder para reglamentar la profesión legal. Es decir, todo abogado tiene que ser autorizado por este Tribunal para practicar la abogacía, y siempre deberá estar autorizado mientras esté activo como abogado. Mientras se mantengan ejerciendo la profesión, este Tribunal tendrá jurisdicción para disciplinarlos y exigirles que cumplan con los requisitos que entendamos sean necesarios para mantener la calidad de los servicios legales en Puerto Rico. Por eso, y como abundaremos a continuación, consideramos que no es necesario que los abogados en Puerto Rico estén obligados a pertenecer a otra entidad cuando ya están bajo la supervisión de este Foro.
Respetamos la voluntad legislativa de promulgar la Ley Núm. 109-2014 para, entre otras cosas, establecer la colegiación obligatoria como un requisito adicional para que los letrados en Puerto Rico ejerzan legítimamente su profesión. No obstante, conforme hemos discutido, para evitar una intromisión indebida con nuestro Poder Inherente, cualquier pieza legislativa dirigida a reglamentar de cualquier modo la profesión legal en nuestra jurisdicción es puramente directiva y no mandatoria. Este Tribunal es quien ostenta la potestad de decidir qué legislación aceptamos como complementaria a nuestro poder de reglamentación. Debido a ello y por todos los fundamentos que discutiremos, rechazamos varios Artículos de la Ley Núm. 109-2014 por considerarlos incompatibles con nuestra facultad para reglamentar la abogacía.
C. Al comienzo de su Alegato, el Estado arguye que “[c]iertamente nada ha cambiado desde Colegio de Abogados de P.R. v. Schneider, supra, que requiera una variación en la norma establecida en dicho caso por esta Alta *818 Curia”.(32) Lo equivocado de esta aseveración es evidente. Presumimos que el Estado sabe —o debería saber— que luego de la decisión que este Tribunal emitió en Schneider sí hubo un cambio significativo en la profesión legal. Y es que por casi cinco (5) años la profesión legal ha funcionado eficientemente bajo un sistema de colegiación voluntaria y no ha ocurrido disloque alguno en el funcionamiento de la Rama Judicial y de la profesión legal como resultado de esa nueva realidad. Ello se debe a que durante ese periodo —y previo al mismo— este Tribunal no claudicó a su deber de regular vigorosamente la profesión legal y continuó velando celosamente por que la Rama Judicial funcionara de manera eficiente.
A pesar de que durante este periodo el Colegio de Abogados experimentó una merma significativa en su matrícula, el sistema de justicia no se ha quebrantado en Puerto Rico. Los tribunales en la jurisdicción siguen funcionando como de costumbre, de manera que no se ha visto afectada ni se ha demostrado una disminución en la calidad de los servicios legales, como tampoco se ha limitado el acceso a la justicia de los ciudadanos.(33) De igual manera, los procedimientos disciplinarios contra aquellos integrantes de la clase togada, encargados de auxiliar a este Foro en la sana administración de la justicia, han continuado con la misma vigorosidad y sentido de responsabilidad que ameritan por parte de este Tribunal.
De hecho, de un estudio llevado a cabo por este Tribunal durante el proceso de investigación para resolver los casos de autos pudimos constatar que nuestras intervenciones para regular la profesión legal en Puerto Rico han sido virtualmente las mismas en los periodos de cinco (5) años *819 antes y después de que se eliminara la colegiación obligatoria en el año 2009. Específicamente, en los términos de 2004 a 2009 este Tribunal intervino en cuatrocientas cuarenta y dos (442) ocasiones para reglamentar algún aspecto de la profesión legal. Mientras que en los términos de 2009 a 2014 se intervino aproximadamente en cuatrocientos cincuenta y un (451) asuntos relacionados a la reglamentación de la abogacía.(34) Es decir, el hecho de que el foro esté integrado no ha demostrado ser una herramienta necesaria para regular eficientemente la abogacía en Puerto Rico.
Es por eso que no nos convencen los argumentos abstractos de los recurridos sobre cómo la integración del foro mediante la asociación obligatoria al Colegio de Abogados es vital para la sana administración de la justicia en Puerto Rico. Curiosamente, los recurridos no cuestionan de manera contundente el hecho de que la Rama Judicial ha seguido funcionando eficientemente sin que una mayoría de los letrados pertenezcan de manera obligatoria al Colegio de Abogados.
Y es que este Tribunal ya tiene a su alcance una variedad de mecanismos que nos auxilian en nuestra delicada función de reglamentar la profesión legal. Por ejemplo, y sin pretender ser exhaustivos, algunas de las herramientas principales con las que cuenta este Tribunal para esos fines son los Cánones de Ética Profesional y el Programa de Educación Jurídica Continua. Como es conocido, los Cánones de Ética Profesional conforman un cúmulo de normas creadas para desalentar que los abogados incurran en conducta antiética en detrimento de la profesión legal y la representación digna de aquellos ciudadanos que contratan sus servicios. Por otro lado, el Programa de Educación Jurídica *820 Continua(35) exige que los abogados se matriculen en una variedad de cursos diseñados para mantenerlos a la vanguardia de los conocimientos necesarios para que estos puedan brindarles a sus clientes una representación digna y adecuada. Tanto el incumplimiento con los Cánones de Ética Profesional como con los requisitos establecidos por el Programa de Educación Jurídica Continua podrían conllevar a que el letrado se enfrente a un procedimiento de desaforo y pierda su licencia. Además de estas herramientas, no olvidemos que este Tribunal tiene la autoridad para reglamentar en cualquier momento en cuanto a todo asunto que sea necesario para garantizar que los letrados se comporten a la altura de su profesión.
De hecho, actualmente este Tribunal tiene ante su consideración un Proyecto que propone unos nuevos Cánones de Ética,(36) lo cual demuestra que este Tribunal sigue siendo proactivo en la reglamentación de la profesión. Así pues, concluimos que todos estos mecanismos ayudan a salvaguardar de manera efectiva los mismos valores que los recurridos alegan solo pueden ser garantizados mediante la integración del foro a través de la asociación obligatoria de los letrados al Colegio de Abogados.
Finalmente, además de las razones previamente mencionadas, pesó en nuestro análisis el argumento vertido por los peticionarios en cuanto a su derecho constitucional a la libertad de asociación. Por ello, además de por los factores ya discutidos, nos vimos llamados a ejercer nuestro Poder Inherente para evitar un menoscabo sustancial por parte del Estado al derecho constitucional de los peticionarios a no asociarse según lo garantiza la Constitución de Puerto Rico.
*821 Por todas estas razones, consideramos que la colegiación obligatoria no es necesaria en nuestra jurisdicción. La experiencia de los pasados cinco (5) años, así como las herramientas que posee este Tribunal para reglamentar la profesión legal, son suficientes y efectivas para velar por el buen funcionamiento de la justicia en Puerto Rico. Por tal razón, somos del criterio que al imponer la colegiación obligatoria, la Ley Núm. 109-2014 incidió de manera inconstitucional con nuestra facultad inherente para reglamentar la profesión legal. Por ende, a tenor con nuestro Poder Inherente declaramos inconstitucionales los Artículos 5, 6 y 11 de la Ley Núm. 109-2014.
D. En fin, la decisión que antecede no tiene el efecto de impedir que el Colegio de Abogados siga funcionando como institución ni mucho menos tiene la intención de impedir su existencia. Ciertamente, el Colegio puede seguir fungiendo como entidad para, inter alia, defender y ser la voz de aquellos togados que elijan formar parte de esa institución. De igual manera, y no empece de que la colegiación a esta entidad será voluntaria, el Colegio puede seguir "[contribuyendo] al mejoramiento de la administración de la justicia; [a formular] informes; [a defender] con celo los derechos e inmunidades de los abogados procurando que éstos gocen ante los tribunales de la libertad necesaria para el buen desempeño de su profesión; [a promover] relaciones fraternales entre sus miembros, y [a velar] por el sostenimiento de una saludable moral profesional entre los colegiados”. Col. de Abogados v. E.L.A., supra, pág. 202, Voto particular disidente, J. Rodríguez Rodríguez, citando a Colegio de Abogados v. Schneider [II], 117 DPR 504, 513—514 (1986). A su vez, el Colegio continuará ostentando la facultad para expedir fianzas notariales y administrar el Fondo de Fianza Notarial.(37)
*822 De igual modo el Colegio de Abogados puede seguir contribuyendo “a enriquecer la vida intelectual de los abogados y [a fortalecer] la aspiración colectiva a una sociedad democrática al amparo de la ley”.(38) La única diferencia es que de ahora en adelante este quehacer no será a expensas del poder coercitivo del Estado.
Con la decisión que hoy emitimos no solo defendemos nuestro poder institucional para regular la profesión legal sino que al mismo tiempo, y como resultado del ejercicio afirmativo de ese poder, reivindicamos los derechos constitucionales de todas las partes involucradas en el caso de autos. Es decir, los letrados pueden escoger pertenecer al Colegio, a la Asociación de Abogados, a cualquier otra entidad de su libre elección o a ninguna.
Hoy las corrientes que colocaron a la clase togada a la deriva de la incertidumbre por fin se aplacan. Con un norte claro, es más fácil el camino y sin duda este Tribunal es quien comprende a plenitud la preeminencia que la profesión legal ostenta en nuestra sociedad. Por ello, es nuestra firme contención que este Tribunal es el ente capaz y adecuado para dirigir el camino de la clase togada en Puerto Rico y garantizar el buen funcionamiento de la Rama Judicial. De entender que el esquema de colegiación voluntaria que ha imperado en Puerto Rico por los pasados cinco años ha provocado un disloque en la administración de la justicia, sin duda, este Tribunal así lo hubiese reconocido. Ello porque regular la profesión legal es mucho más que el ejercicio de un poder, es más bien un deber de la más alta jerarquía. No sería responsable claudicar a ese deber tan importante para ejercer el poder caprichosamente. En reconocimiento de lo anterior, reafirmamos que no hemos encontrado bases suficientes para avalar la integración del foro en nuestra jurisdicción.
*823 V
Por los fundamentos que anteceden, y en ejercicio de nuestro Poder Inherente, se declaran inconstitucionales los Artículos 5, 6 y 11 de la Ley Núm. 109-2014. Ello, ya que al aprobar estos artículos la Asamblea Legislativa violó la Doctrina de Separación de Poderes al establecer requisitos para ejercer la profesión legal en Puerto Rico en contravención del Poder Inherente que ostenta este Tribunal para regular esa profesión. Revocamos aquellas partes de Colegio de Abogados de P.R. v. Schneider, supra, que sean incompatibles con los pronunciamientos que anteceden.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Martínez Torres emitió una opinión de conformidad. El Juez Asociado Señor Rivera García emitió una opinión de conformidad. La Jueza Presidenta Señora Fiol Matta disintió y emitió la expresión siguiente:
Disiento por entender que la Ley 109-2014 no infringe el poder inherente de este Tribunal para reglamentar el ejercicio de la profesión. Habida cuenta de que en estos casos consolidados se acortaron los términos reglamentarios, me acojo al término dispuesto en la Regla 5(b) de nuestro Reglamento, 4 LPRAAp. XXI-B.
La Juez Asociada Señora Rodríguez Rodríguez disintió y emitió la expresión siguiente:
Tomando en consideración la premura improcedente con la que se atendió el caso de referencia, disiento y me reservo el derecho a emitir una ponencia al amparo de la Regla 5(b) de nuestro Reglamento, 4 LPRAAp. XXI-B.
El Juez Asociado Señor Estrella Martínez emitió una opinión disidente. La Jueza Asociada Oronoz Rodríguez disintió y emitió la expresión siguiente:
Disiento de lo resuelto en la Opinión mayoritaria por entender que no procedía declarar la inconstitucionalidad de la Ley *824 Núm. 109-2014 y me reservo el derecho a emitir una ponencia al amparo de la Regla 5(b) del Reglamento del Tribunal Supremo, 4 LPRAAp. XXI-B.
Opinión de conformidad emitida por el
Juez Asociado Señor Martínez Torres.
A diferencia de la Constitución federal, la Constitución del Estado Libre Asociado de Puerto Rico garantiza expresamente la libertad de asociación como derecho fundamental del individuo frente al Estado. Art. II, Sec. 6, Const. PR, LPRA, Tomo 1. Mediante la ley que nos ocupa, el Estado creó una organización de abogados y pretende obligar a to-dos los miembros activos de la profesión legal a pertenecer a ese ente. Si la libertad de asociación significa algo más que una retórica hueca entonces hay que concluir que el individuo retiene, como derecho fundamental de rango constitucional, la libertad tanto de asociarse como de escoger no asociarse con otra persona o grupo. “Por supuesto este valor superior no supone una irrestricción absoluta, de forma que no pueda subordinarse a otros intereses cuando la necesidad y conveniencia públicas lo requieran. Es precisamente esta área la que nos corresponde deslindar en cada caso específico”. Mari Bras v. Casañas, 96 DPR 15, 21 (1968).
Aclarado esto, el escrutinio legal aplicable es el que siempre utilizamos cuando la controversia involucra un derecho constitucional fundamental. Es decir, para sostener una asociación compulsoria el Estado tendrá que ofrecer razones de peso, es decir intereses apremiantes, y deberá demostrar que la legislación está diseñada estrechamente para alcanzar esos intereses, o sea que no hay otra manera de lograr los objetivos de la legislación impugnada que no sea la asociación forzada. Véase U.P.R. v. Laborde Torres y otros I, 180 DPR 253, 289 (2010), y los demás casos citados en el escolio 28 de la Opinión del Tribunal. Como concluye el Tribunal en *825 su Opinión, el gobierno no pudo cumplir con el peso legal de probar que la asociación compulsoria de los abogados es indispensable para lograr los objetivos que el legislador enunció.
Según la Constitución de Estados Unidos, la asociación compulsoria se puede establecer sin violar la libertad de asociación de los abogados, siempre que no se obligue a los objetores a costear con sus cuotas las actividades de la asociación que no estén relacionadas con la reglamentación de la profesión o con los servicios legales que se prestan a los habitantes del estado. Keller v. State Bar of California, 496 US 1 (1990).
La situación según la Constitución del Estado Libre Asociado de Puerto Rico es diferente. Como señalamos prístinamente en nuestra Resolución en Col. de Abogados v. E.L.A., 181 DPR 135, 137 (2011), cert. denegado, Puerto Rico Bar Ass’n v. Commonwealth of Puerto Rico, 132 S.Ct. 1535 (2012), “es la colegiación compulsoria de una clase profesional la que crea una fricción inevitable con la libertad de asociación de los afectados”.
En el caso de los abogados, como explica el Tribunal, ese conflicto es mayor debido a que, según el esquema constitucional local, somos nosotros en última instancia, no la Asamblea Legislativa, los encargados de reglamentar la práctica de la profesión legal. Así pues, la intromisión de la Asamblea Legislativa mediante la ley que nos ocupa es una infracción doble, tanto al entendido constitucional de separación de poderes como también a los derechos constitucionales de los abogados. Como se puede apreciar, atendemos esta controversia exclusivamente al amparo de la Constitución del Estado Libre Asociado de Puerto Rico. Es decir, resolvemos por fundamentos locales independientes al derecho constitucional federal de asociación.
En este aspecto, la Carta de Derechos de la Constitución local concede más derechos que su contraparte federal. Después de todo, la Constitución de Puerto Rico se aprobó *826 en 1952, una fecha más reciente que la Constitución de Estados Unidos (que entró en vigor en 1789). La Constitución de Puerto Rico consagra expresamente la libertad de asociación como una garantía fundamental.
La Convención Constituyente quiso “incorporar un nuevo aspecto del derecho y de la libertad, y que no aparece tradicionalmente en las constituciones clásicas, el que se refiere al derecho de libre asociación y libre organización [...]”. 2 Diario de Sesiones de la Convención Constituyente 1104 (1961) (Informe del delegado Jaime Benitez, Presidente de la Comisión de la Carta de Derechos). Se insistió en hacer expresa la garantía de libertad de asociación por tratarse de “uno de los aspectos más importantes de la democracia”. Escuela de Administración Pública de la Universidad de Puerto Rico, La nueva Constitución de Puerto Rico, Río Piedras, EDUPR, 1954, págs. 224-225.
La See. 6 del Art. II de la Carta de Derechos, supra, se basa no solo en el acervo histórico de la Constitución de Estados Unidos, sino que incorpora el principio básico del Art. 20 de la Declaración Universal de Derechos Humanos, proclamada por la Organización de Naciones Unidas, de que “[n]adie podrá ser obligado a pertenecer a una asociación”. Los estudiosos reconocen la importancia de esta influencia. J.J. Álvarez González, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis, 2009, pág. 11.
Establecido este acervo histórico, se necesita mucha fuerza de cara para impugnar esta decisión como una supuesta intromisión del Tribunal. Es todo lo contrario. La Constitución nos encomienda ser sus intérpretes máximos y proteger los derechos de los individuos frente a los designios inconstitucionales del gobierno. Art. V, Sec. 4, Const. PR, LPRA, Tomo 1.
En esta ocasión fue la Asamblea Legislativa la que usurpó inconstitucionalmente las facultades del Tribunal Supremo. Ya denunciamos esa tendencia en Alvarado Pa *827 checo y otros v. ELA, 188 DPR 594 (2013), reafirmado por Opinion en AMPR et als. v. Sist. Retiro Maestros V, 190 DPR 854 (2014). Esta parece ser una tentación legislativa irresistible y de cuño reciente que no podemos convalidar.
Por eso rechazo las amenazas que se emitieron cuando paralizamos interlocutoriamente la vigencia de la Ley Núm. 109-2014. En aquel entonces se habló de limitar la jurisdicción de este Tribunal debido a que acogimos este recurso y a pesar que un intento anterior fue declarado inconstitucional en AMPR et als. v. Sist. Retiro Maestros V, id. Hoy, como siempre, resolvemos conforme a Derecho. “No por chantajes, presiones o comentarios públicos injustos, insultantes y lamentables por miembros de las otras dos ramas de gobierno que han sido electos para servir como líderes y ser ejemplo para nuestros jóvenes, y que tratan de anticipar e influenciar indebidamente las determinaciones de los componentes de la Rama Judicial”. Trinidad Hernández et al. v. ELA et al., 188 DPR 828, 840 (2013) (Opinión de conformidad del Juez Asociado Señor Feliberti Cintrón). ¿Será que es mucho pedir que se respete la Constitución?
Obligar a un profesional a asociarse con quien no quiere no es una condición válida para obtener una licencia y practicar su profesión. El Estado no adelantó una sola razón apremiante que no se pueda lograr sin obligar a los abogados a asociarse con quien no desean. De hecho, la Asamblea Legislativa ni siquiera exploró este aspecto al legislar. El único argumento que el Estado adelanta es la compulsoriedad como fin en sí mismo y no como lo que es: un método para lograr otros intereses. En síntesis, el argumento de la Procuradora General se reduce a que es válido obligar a los abogados a pertenecer a una asociación profesional porque esa es la única manera de obligarlos. El argumento es tan llano que no hay que discutirlo más.
Sin duda, la reglamentación de la práctica de una profesión es un asunto importante. Si bien es cierto que la *828 reglamentación de los abogados como funcionarios del Tribunal está en manos de este Tribunal, eso no invalida cualquier legislación relacionada con este tema. La separación de poderes no significa que las ramas del gobierno operan con independencia absoluta unas de las otras. Hernández Agosto v. López Nieves, 114 DPR 601, 619 (1983). “Por el contrario, la interacción que la Constitución establece entre las funciones de las ramas de gobierno crea un sistema de pesos y contrapesos con el propósito de generar un equilibrio dinámico entre poderes coordinados y de igual rango, y evitar así que ninguno de éstos amplíe su autoridad a expensas de otro”. (Escolios omitidos). Misión Ind. P.R. v. J.P., 146 DPR 64, 89 (1998). Véase, además, Nieves Huertas et al. v. ELA I, 189 DPR 611, 619 (2013) (Sentencia).
Al adjudicar tenemos que tener cuidado de no invalidar una legislación más allá de lo que es necesario. Si exigimos que la Asamblea Legislativa no interfiera con las facultades que la Constitución encomendó a este Tribunal, debemos reciprocar y no intervenir impropiamente con las facultades válidas de la Rama Legislativa. Solo así mantenemos el equilibrio diseñado como sostén de nuestro andamiaje constitucional. Por consiguiente, hay que partir de la premisa de que nada impide que la Asamblea Legislativa atienda un asunto mediante legislación siempre que al hacerlo no viole un derecho constitucional ni interfiera con las facultades que la Constitución encomienda a otra rama de gobierno. Por eso no hay nada inconstitucional en que la Asamblea Legislativa cree una asociación de abogados voluntaria como ente cuasipúblico. De hecho, solo la Asamblea Legislativa puede crear mediante legislación una entidad como el Colegio de Abogados; nosotros carecemos de esa facultad. Ese estatuto no interfiere con la reglamentación de los requisitos para ejercer la abogacía. Por supuesto, la asociación creada por ley estará facultada para aprobar reglamentos internos y decidir bajo cuáles circunstancias una *829 persona se hará miembro o bajo cuáles dejará de serlo. Nada impide que la Asamblea Legislativa provea para ello.
No nos corresponde interferir con esa facultad legislativa con el pretexto de que somos nosotros quienes deciden qué personas están autorizadas a practicar la abogacía y con cuáles requisitos tienen que cumplir. Si asumiéramos la posición contraria tendríamos que concluir que nos equivocamos al sostener la validez de la ley de 2009 que hizo voluntaria la membresía en el Colegio de Abogados. Col. de Abogados v. E.L.A., supra. Tendríamos que concluir también, siguiendo tan dudoso argumento, que no hay una penalidad efectiva por practicar ilegalmente la abogacía, pues la Asamblea Legislativa habría interferido con nuestras facultades al aprobar la legislación penal que define en qué consiste esa práctica ilegal pero por otro lado, este Tribunal no tiene la autoridad constitucional para crear delitos.
Nada impide que una asociación voluntaria de abogados, sea el Colegio de Abogados, la Asociación de Abogados u otra, proponga a este Tribunal un proyecto de cánones de ética para la profesión legal. De hecho, los cánones más reconocidos en Estados Unidos —adoptados con algunas variantes en múltiples estados de la Unión— son los de la American Bar Association, una entidad totalmente voluntaria. Tampoco hace falta la colegiación obligatoria para reglamentar ni mucho menos para ofrecer cursos de educación continua. Ese asunto lo reglamenta este Tribunal y precisamente se encuentra bajo estudio. Como organización voluntaria, el Colegio de Abogados ha ofrecido estos cursos por años. Por otro lado, no hace falta la compulsoriedad en la membresía para que el Colegio ofrezca servicios legales ni para que investigue y reporte posibles violaciones éticas de sus asociados. Mucho menos hay que obligar a los abogados a pertenecer al Colegio por los beneficios materiales que este pueda ofrecer a su *830 matrícula. Por el contrario, puede argumentarse que la voluntariedad es un incentivo para que una organización que desee prosperar y quiera ser relevante ofrezca servicios y beneficios de calidad a sus asociados. La membresía obligatoria no incentiva esos ofrecimientos; por el contrario, hace innecesarios los alicientes para ofrecerlos.
Para lo que sí es necesaria la colegiación obligatoria es para mantener en posiciones de influencia a unas personas y a una institución sin tener que ganarse la confianza de sus representados; para costear todo lo que la directiva quiera y para hacer creer que la entidad actúa y se expresa a nombre de toda una matrícula sin importar la opinión de los asociados. La solución concebida hasta ahora (el descuento de parte de la cuota que pagan los colegiados) no atiende el problema de fondo. Esa solución parte de la premisa de que no hay daño si se obliga a alguien a asociarse para ciertos fines y que por eso no hay que explorar otras alternativas que no lesionen el derecho fundamental de libre asociación.
El enfoque que trae hoy este Tribunal es distinto. Si el sostén principal de una democracia es la diversidad de ideas, la pluralidad de intereses y la tolerancia a las opiniones variadas, como bases fundamentales para recabar la lealtad a nuestro sistema de gobierno, entonces obligar a to-dos a asociarse en contra de su voluntad le resta valor a esos pilares de la vida en sociedad. Por eso, la asociación obligatoria como la concibe la Ley Núm. 109-2014 es la antítesis de la democracia. ¿Es que es mucho pedir que seamos democráticos?
No podemos ser timoratos cuando se trata de proteger los derechos individuales que la Constitución reconoce expresamente. Por eso me parece inescapable concluir, como señaló el Juez Presidente Señor Hernández Denton en su opinión disidente en Col. de Abogados v. E.L.A., supra, que nuestro razonamiento no puede limitarse a los *831 abogados. Los demás profesionales no tienen menos derechos frente al Estado.
En Puerto Rico proliferó durante todo el siglo xx la práctica de obligar a los profesionales y los que ejercen oficios —no solo a los abogados— a asociarse en “colegios”, es decir en asociaciones con membresía compulsoria, desde actores y plomeros hasta médicos y enfermeros. Véase la lista completa en la opinión disidente del Juez Presidente Señor Hernández Denton en Col. de Abogados v. E.L.A., supra, págs. 193-194. Cuando se crearon estas asociaciones en tierras y épocas lejanas no se concebía el derecho administrativo moderno. Sus orígenes se hallan en el antiguo Derecho romano, donde comenzaron como cofradías religiosas y gremiales. Estas asociaciones ofrecían la conveniencia de que los que desearan practicar un oficio o aprender una disciplina liberal aprendieran de sus homólogos. Por eso se les llama “colegios”. Con el pasar del tiempo la colegiación se extendió para abarcar múltiples profesiones y oficios, aunque ya no se aprendan en el taller sino en escuelas especializadas o en las universidades. A su vez, estos gremios adquirieron privilegios concedidos por el Estado y dejaron de ser asociaciones voluntarias. G. Figueroa Prieto, Reglamentación de la conducta profesional en Puerto Rico: pasado, presente y futuro, 68 Rev. Jur. UPR 729, 742-745 (1999).
En Puerto Rico, el legislador no entendió o ignoró el mandato de libre asociación que el Pueblo incluyó en la Carta de Derechos y siguió aprobando la creación de colegios profesionales aun después de 1952, con la anuencia de este Tribunal. No más. No estamos ante meras “inconveniencias personales”, como lamentablemente este Tribunal caracterizó los reclamos de libre asociación hechos en Colegio de Abogados de P.R. v. Schneider, 112 DPR 540, 549 (1982). La ejecución de la política pública no se puede delegar a un grupo de interés a expensas de las garantías constitucionales que protegen a todos los individuos.
*832 Si lo que se busca al delegar la reglamentación de las profesiones es reducir los costos al fisco, basta con crear unas juntas reglamentadoras compuestas por profesionales (que incluso pueden ser elegidos por ellos mismos) y costearlas con los fondos que se recaudan por el pago de las licencias de la clase afectada. Eso también cumple con el objetivo de que sean esos mismos profesionales quienes se reglamenten a sí mismos sin crear una estructura costosa y burocrática y, sobre todo, sin obligar a nadie a asociarse con quien no quiere. En otras palabras, sin violar la Constitución.
En este caso no se ha aducido un interés apremiante válido que solamente pueda ser atendido mediante la colegiación compulsoria. Existen métodos para reglamentar la profesión legal y atender los mismos intereses públicos pero sin lesionar la libertad de asociación de los abogados. Hoy invalidamos la asociación obligatoria de los abogados porque eso es lo que se plantea en este caso y es lo que la Constitución de Puerto Rico nos requiere. Por eso no puedo menos que celebrar la derogación del precedente de Colegio de Abogados de P.R. v. Schneider, supra, una página negra en la vasta jurisprudencia de derechos civiles que ha emitido este Tribunal.
Pero debe quedar claro que los principios que sentamos hoy son de aplicación general y tienen que evaluarse también en el contexto de otras profesiones y oficios. Irónicamente, gracias a la insistencia del Colegio de Abogados para que se aprobara esta legislación de membresía obligatoria, los contornos constitucionales en este asunto están más claros hoy y ahora todos los profesionales de Puerto Rico saben cuáles son los linderos de su derecho de libre asociación.
*833 Opinión de conformidad emitida por el
Juez Asociado Señor Rivera García.
La determinación que hoy alcanza una mayoría de los miembros de este Tribunal no concierne específicamente al Colegio de Abogados y Abogadas de Puerto Rico. Mucho menos representa una evaluación histórica de cuán bien o mal esta institución ha cumplido los propósitos legislativos para los que se creó. El presente caso atañe más bien a si la Asamblea Legislativa excedió sus facultades constitucionales al establecer el requisito de colegiación como condición necesaria e imprescindible para ejercer la profesión legal en Puerto Rico. Hoy contestamos afirmativamente esa interrogante siguiendo los mismos parámetros que este Tribunal Supremo estableció desde hace más de cien años. Así, respaldados exclusivamente en nuestro poder inherente para regular el ejercicio de la abogacía en nuestra jurisdicción, optamos por no avalar el requisito de colegiación obligatoria establecido por la Asamblea Legislativa mediante la Ley Núm. 109-2014.
Los antecedentes fácticos y el derecho aplicable están expuestos correctamente en la Opinión del Tribunal. Por ello, únicamente emitiré algunas expresiones para explicar por qué estoy conforme con la resolución que hoy disponemos para los presentes casos de tan alto interés para la profesión jurídica y la comunidad en general.
r—I
Como bien surge de la Opinión mayoritaria, la doctrina de la separación de poderes pretende delimitar el campo de acción de cada una de las ramas de gobierno. Conforme a ese modelo, la Constitución de Puerto Rico expresamente atribuye poderes específicos a cada uno de los tres compo *834 nentes de nuestro sistema gubernamental.(1) No obstante, en la práctica esta doctrina no supone una separación categórica y absoluta que conlleve una independencia total entre las tres ramas constitucionales. Por el contrario, el establecimiento de poderes específicos propios de cada rama provoca una inevitable interacción de frenos y contrapesos que evita la concentración desmedida de poder en una de ellas.(2) En ese ejercicio de imperfecta separación y delicado balance, pueden surgir ocasiones en que, al menos inicialmente, una rama de gobierno y otra tengan un poder de acción concurrente. Cuando ello ocurre, surge la necesidad de definir a quién le corresponde la responsabilidad final de actuar. Es decir, aun cuando se susciten circunstancias en que pueda existir un campo de acción compartido, le corresponderá a una de las ramas ejercer la responsabilidad final de determinar la validez de la acción tomada. Ello, como condición necesaria para el efectivo ejercicio de los poderes expresamente delegados en la Constitución.
Eso es lo que ocurre, precisamente, con la regulación de la profesión legal en Puerto Rico, para la cual tanto el Poder Legislativo como el Poder Judicial cuentan con facultades concurrentes. Por un lado, no hay duda alguna de que la Constitución estatal no solo delega al Tribunal Supremo de Puerto Rico el Poder Judicial, sino que además le encomienda la responsabilidad de administrar los tribunales y nuestro sistema de justicia, del cual los abogados son *835 parte integral.(3) Siendo así, cualquier asunto concerniente a la reglamentación de los abogados forma parte de las prerrogativas constitucionales de este Tribunal Supremo. Por otro lado, es evidente el poder de razón de estado con el que cuenta la Asamblea Legislativa para promulgar la legislación que entienda conveniente para salvaguardar el bienestar y la seguridad de la ciudadanía en general.(4)
Ahora bien, desde hace más de cien años, este Tribunal estableció que las pautas y regulaciones referentes a los abogados y abogadas constituye una función inherente e inseparable de este Tribunal como representante máximo del Poder Judicial.(5) Esto es así ya que los abogados son funcionarios de los tribunales que representan una pieza clave para el efectivo ejercicio del poder constitucional de *836 administrar la justicia.(6) Como consecuencia, son los miembros de este Tribunal Supremo quienes tienen la responsabilidad última de determinar qué reglamentación o normativa es aplicable a la clase togada de Puerto Rico.
En ese contexto, la legislación promulgada a tales fines por la Asamblea Legislativa será única y exclusivamente de carácter directivo y bajo ninguna circunstancia mandatoria.(7) Es por ello, que habrá ocasiones en que este Tribunal sostenga la validez de la legislación aprobada como una medida auxiliar a su poder inherente, pero habrá otras instancias en que tal legislación sea anulada por constituir una extralimitación de poder frente a las facultades inherentes de este Tribunal.(8) Ello, como consecuencia natural del principio de separación de poderes que rige *837 en nuestro ordenamiento y de donde emana nuestro poder inherente para regular la profesión de la abogacía.(9)
Dentro de ese marco de preeminencia del Poder Judicial frente al Poder Legislativo, este Tribunal siempre ha enfatizado el carácter directivo y no mandatorio de la legislación promulgada referente a los abogados y abogadas.(10) En consonancia con ello, en múltiples ocasiones este Tribunal Supremo ha anulado u obviado legislación “que ha tenido el efecto de privar o menoscabar el derecho inherente de las cortes” de regular la profesión legal.(11) Basta un simple repaso de algunas de las opiniones emitidas por este Máximo Foro para constatar lo arraigado y presente que ha estado en nuestro ordenamiento el remedio que hoy proveemos.
Una de las primeras manifestaciones de esta situación concernió a la Ley Núm. 78 de 11 de mayo de 1928, la cual disponía, entre otros asuntos, que aquellos graduados como abogados en una universidad acreditada en Europa o Estados Unidos podían ser admitidos a ejercer la abogacía en Puerto Rico sin necesidad de tomar la reválida.(12) Basado en esa legislación, en Boneta, Ex parte, 39 DPR 154 (1929), dos graduados de derecho de universidades estadounidenses acudieron ante esta Curia para solicitar admisión al foro local. El Tribunal Supremo denegó tal solicitud basado en el principio de supremacía del Poder Judicial en esta materia frente al cual el Poder Legislativo no podía establecer ley alguna que le obligara. Sobre este particular, el Tribunal Supremo expresó lo siguiente:
*838 [...] la facultad de admisión de aspirantes al ejercicio de la abogacía, es más poder judicial que de ningún otro poder. Indudablemente, si los abogados son funcionarios de los tribunales, y tienen en ellos y ante ellos la misión de auxiliar la administración de justicia, si ellos cooperan con los tribunales en el ejercicio de un poder tan sagrado, y si ellos se encuentran, por virtud de las disposiciones de la ley, fundada en la práctica sana, justa, lógica y constante, bajo la inspección de esos mismos tribunales, a éstos, antes que a ningún otro poder, corresponde la facultad de admitir o no a los que pretenden ser sus auxiliares y cooperadores en la más alta misión que puede encomendarse a un hombre o a un conjunto de hombres. (Enfasis y negritas suplidos).(13)
Unos años más tarde, este Tribunal enfrentó una situación similar en Ex parte Jiménez, 55 DPR 54 (1939). En esa ocasión, un aspirante a abogado graduado de la Universidad de Puerto Rico solicitó ser admitido al ejercicio de la abogacía sin tomar la reválida. De acuerdo a este, el Tribunal tenía que conceder tal admisión, ya que la Ley Núm. 1 de 21 de mayo de 1933 expresamente disponía que las personas que obtuvieren el grado de Bachiller en Leyes de la Universidad de Puerto Rico no estarían obligadas a to-mar el referido examen. Una vez más, el Tribunal Supremo se amparó en su poder inherente para regular la profesión y no aceptó la condición impuesta por la Asamblea Legislativa. Al respecto, esta Curia expresó lo siguiente:
De acuerdo con la jurisprudencia citada debemos resolver que las disposiciones de la sección 1 de la Ley núm. 1 de marzo 21 de 1933, invocadas por el peticionario como base de su alegado derecho a ser admitido sin examen, constituyen condiciones mínimas fijadas por el poder legislativo, que en nada obligan a esta Corte Suprema, la cual conserva intacta su facultad inherente y estatutaria de fijar las condiciones y requisitos que deberán cumplirse por todo solicitante de una licencia de abogado. (Enfasis y negritas suplidos).(14)
Posteriormente, esta vez en el contexto de un procedimiento disciplinario de desaforo, en In re Abella, 67 DPR *839 229 (1947), dilucidamos si procedía desaforar al entonces abogado Luis Abella Blanco, aun cuando la ley disponía que ello no procedía porque al momento había sido convicto por un delito que implicaba depravación moral. Nuevamente, el Tribunal rechazó la contención de brindarle carácter de obligatoriedad a una ley que regulaba el ejercicio de la profesión legal y ordenó el desaforo del licenciado Abella Blanco. Específicamente, afirmó lo siguiente:
En primer lugar, tenemos poder inherente para disciplinar a los miembros del foro. La Ley de 1909 sólo es directiva, y no mandatoria para este Tribunal. Bajo nuestro poder inherente, es nuestro deber desaforar a Abella si por su conducta ha demostrado, no necesariamente en el ejercicio de la profesión de abogado, que no es digno de ser un miembro del foro. (Citas omitidas y énfasis suplido).(15)
Como vemos, tales determinaciones demuestran que el poder inherente de este Tribunal es una prerrogativa centenaria que en ningún momento hemos vacilado en ejercer como máximos custodios de la profesión legal cuando entendemos que la legislación promulgada no es cónsona o es contraria a nuestras facultades. El ejercicio de la integración de la profesión de la abogacía mediante la afiliación obligatoria a una institución, no está ajeno a esta norma básica de la preeminencia de la acción judicial.
En otros términos, la integración de la profesión legal no ha dependido, y en ningún momento dependerá, de lo que disponga la Asamblea Legislativa sobre el particular, sino de lo que decida el Poder Judicial. Esto, porque como explicamos anteriormente, aunque inicialmente la Asamblea Legislativa ostenta la prerrogativa de legislar sobre el particular basado en su poder de razón de estado, la responsabilidad última de determinar si ello procede o no es exclusiva de este Tribunal Supremo por virtud de su poder inherente.
*840 Así lo reconoció este Tribunal, incluso, en Colegio de Abogados de P.R. v. Schneider, 112 DPR 540, 546 (1982), al ex-presar que la preeminencia de la acción judicial en este campo “incluye naturalmente la facultad de pasar juicio sobre si debe unificarse o no el foro en una jurisdicción y bajo qué condiciones”. De hecho, en aquella ocasión, los miembros de esta Curia, por voz del entonces Juez Presidente Señor Trías Monge, expresaron que la magnitud del poder inherente de este Tribunal Supremo es tal, que aun ante la existencia de una legislación que prohíba la colegiación obligatoria, el Tribunal puede disponer lo contrario.(16)
Bajo esas circunstancias, si la Asamblea Legislativa interesa recomendar que adoptemos alguna regulación o requisito para el ejercicio de la abogacía en Puerto Rico como medida auxiliar a nuestro poder inherente, esta deberá ex-presar claramente las razones de peso que le motivaron a promulgar la legislación correspondiente, de manera que ubique a esta Curia en posición de evaluar los méritos de la propuesta. Después de todo, siendo la regulación de la abogacía materia inherente a los poderes constitucionales de este Tribunal, es la Asamblea Legislativa quien tiene el deber de explicar las razones para legislar sobre el particular y no viceversa. Máxime cuando ya existían manifestaciones de este Tribunal que consignaban nuestra posición sobre el requisito de colegiación propuesto.(17)
En el caso particular de la Ley Núm. 109-2014, la cual establece el requisito de colegiación como condición necesaria para ejercer la profesión legal en Puerto Rico, la propia Asamblea Legislativa reconoció que la regulación de la profesión legal es función inherente del Poder Judicial, especí *841 ficamente de este Tribunal Supremo.(18) Aun así, livianamente entendió que era necesario promulgar la Ley Núm. 109 como complementaria a ese poder y para ello explicó que
[...] existe un interés apremiante que tiene que ser protegido por esta Asamblea Legislativa el cual consiste en que todas las personas que practiquen la profesión legal en el Estado Libre Asociado de Puerto Rico pertenezcan a un colegio integrado de abogados y abogadas que represente una garantía para la ciudadanía de tener acceso a una representación legal digna, capacitada, íntegra y diligente.(19)
Más adelante, la Exposición de Motivos añade lo siguiente:
Cuando se trata de la abogacía y el notariado, el interés apremiante del Estado es ofrecerle las garantías adicionales de una colegiación integrada. Junto con el poder inherente del Tribunal Supremo de Puerto Rico para regular la profesión, la colegiación integrada de abogados y abogadas, de notarios y notarías, ofrece una estructura adicional de apoyo y —en el buen sentido— de contrapeso en el rol de garantizar a la ciudadanía las mejores prácticas profesionales posibles. Este binomio de autoridad estatal reguladora y colegio integrado se repite en prácticamente todas las profesiones y oficios de alta responsabilidad pública como lo son los médicos cirujanos, los ingenieros, los trabajadores sociales y otros. La única distinción es que en el caso de las demás profesiones y oficios la autoridad reguladora surge de delegación legislativa al Ejecutivo y en el caso de la abogacía y el notariado surge del poder inherente del Tribunal Supremo de Puerto Rico.
En el caso de la abogacía, el interés apremiante del Estado Libre Asociado en colegiar surge de que sus practicantes son custodios del patrimonio, el derecho a la libertad, a la protección o reivindicación de las víctimas de delito, a la propiedad, a las libertades y derechos civiles reconocidos constitucionalmente, a la asistencia social, a las relaciones paterno filiales, al disfrute de la vida y —en ocasiones— al derecho a la vida misma. La práctica del derecho comprende una amplia gama de ofrecimientos de servicios en la cual el profesional del derecho ostenta un amplio poder de acción en relación a la causa *842 de su cliente o dienta. El ejercicio de este poder requiere un altísimo nivel de responsabilidad y por lo tanto regulación estricta. Esta regulación constituye un interés apremiante para el Estado Libre Asociado de Puerto Rico en su deber de velar por la protección de sus ciudadanos y ciudadanas, entidades y el tráfico comercial.(20)
De una lectura del informe presentado por la Comisión de los Jurídico de la Cámara de Representante sobre lo que hasta ese momento era el Proyecto de la Cámara 1366, no surge explicación adicional a la citada anteriormente.(21) Únicamente, se añade que “[n]uestro sistema republicano de gobierno tiene un interés apremiante en regular la abogacía; [sic] en que toda persona tenga representación legal adecuada y en velar por el acceso de los ciudadanos a la justicia”.(22)
Por su parte, la Comisión de lo Jurídico, Seguridad y Veteranos del Senado de Puerto Rico expuso en su Informe Positivo sobre el P. de la C. 1366 que “la colegiación es fundamental para garantizar la excelencia profesional”(23) Así, explicaron que “[e]l Estado tiene un interés apremiante de proteger y fortalecer la profesión jurídica y los servicios que brinda el colegio”.(24) Por ello, concluyeron que es
[...] necesario que se mantenga una sola entidad colegiada para la profesión de la abogacía en Puerto Rico. De esta manera, se asegura brindar los recursos necesarios al Colegio, para cumplir con su labor encomiable de buscar el acceso a la justicia, de brindar una representación digna y de ser defensor y representante [de] todos los abogados de Puerto Rico.(25)
Estas tres expresiones ofrecidas en distintas instancias del quehacer legislativo, en esencia reflejan dos razones *843 como explicación para obligar a los abogados y abogadas a colegiarse: primero, la presunta necesidad de contar con una entidad que “apoye” a este Tribunal en su responsabilidad de supervisar y fiscalizar a los miembros de la profesión legal, y segundo, la importancia de asegurar que el Colegio de Abogados cuente con los recursos económicos necesarios que viabilice su subsistencia y funcionamiento.
No obstante, en ningún documento del historial legislativo, y mucho menos en el alegato presentado por la Oficina de la Procuradora General, se incluye fundamento alguno que demuestre y nos persuada a pensar que, en efecto, este Tribunal necesita del apoyo de una institución externa para cumplir con su responsabilidad de supervisar y fiscalizar a los miembros de la clase togada del País.(26) Siendo así, el Estado falló en brindar una explicación que justificara el que este Tribunal avalara la legislación adoptada.
Finalmente, aprovecho este contexto para enfatizar que la Asamblea Legislativa debe tener presente que toda intervención con la reglamentación de la abogacía tiene el potencial de ser una intromisión indebida con el poder inherente de este Tribunal para reglamentar la profesión legal. Por lo tanto, y tomando en cuenta el carácter directivo de tales medidas, esta debe brindar una explicación que persuada a los miembros de este Tribunal a acoger la correspondiente legislación como una medida auxiliar a nuestro poder reglamentario.(27)
*844 Ciertamente, como miembro de este Máximo Foro tengo la responsabilidad ministerial y el más genuino interés de asegurar que los abogados y abogadas rijan su conducta profesional por los más altos estándares éticos y que la ciudadanía en general tenga acceso a servicios legales de primer orden. Ahora bien, es mi criterio judicial que para la consecución de tales objetivos resulta innecesario obligar a todos los profesionales del Derecho a adscribirse a una entidad en particular.(28) Por todo lo anterior, estoy conforme con el dictamen que toma este Tribunal de declarar inconstitucionales los Artículos 5, 6 y 11 de la Ley Núm. 109-2014, supra.

 A pesar de que el compañero Juez Asociado Señor Estrella Martínez tituló su opinión como una “disidente”, la realidad es que concurre con declarar inconstitucionales los Artículos de la Ley Núm. 109-2014 que requieren la colegiación obligatoria en Puerto Rico. Por lo tanto, existen seis (6) votos para declarar inconstitucionales estas secciones.

 Ante las expresiones disidentes que se emiten, expresamos que esta Opinión fue circulada a todos los integrantes de este Tribunal el 1 de octubre de 2014. Al momento de circular la Opinión, el Tribunal acordó certificar estos casos hoy 16 de octubre de 2014. Es decir, los integrantes de este Tribunal contaron con más de dos (2) semanas para estudiar la Opinión, emitir sus votos o escribir sus correspondientes opiniones. Como se puede apreciar, tres (3) integrantes de este Tribunal emitieron Opiniones particulares.

 Para un estudio detallado sobre la historia del Colegio de Abogados previo a la aprobación de la Ley Núm. 43 de 14 de mayo de 1932 (4 LPRA see. 771 et seq.), véase G. Figueroa Prieto, Propuesta para la reglamentación de la conducta profesional en Puerto Rico, 81 Rev. Jur. UPR 1 (2012).

 La colegiación obligatoria propuesta por la Ley Núm. 43 estaba condicionada a que una mayoría de los letrados así la aceptara en la celebración de un referéndum convocado por el referido estatuto. Véase el Art. 1 de la Ley Núm. 43 (4 LPRA sec. 771). Véanse, además: Colegio de Abogados de P.R. v. Schneider, 112 DPR 540, 545 (1982); Figueroa Prieto, supra, pág. 7.

 Figueroa Prieto, supra, pág. 13. Véanse, además: Schneider v. Colegio de Abogados de Puerto Rico, 546 F.Supp. 1251 (D. P.R. 1982); In re Justices of Supreme Court of Puerto Rico, 695 F.2d 17 (1er Cir. 1982); Schneider v. Colegio de Abogados de Puerto Rico, 565 F.Supp. 963 (D. P.R. 1983); Schneider v. Colegio de Abogados de Puerto Rico, 572 F.Supp. 957 (D. P.R. 1983); Romany v. Colegio de Abogados de Puerto Rico, 742 F.2d 32 (1er Cir. 1984); Schneider v. Colegio de Abogados de Puerto Rico, 670 F.Supp. 1098 (D. P.R. 1987); Schneider v. Colegio de Abogados de Puerto Rico, 682 F.Supp. 674 (D. P.R. 1988); Schneider v. Colegio de Abogados de Puerto Rico, 917 F.2d 620 (1er Cir. 1990); Schneider v. Colegio de Abogados de Puerto Rico, 947 F.Supp. 34 (D. P.R. 1996).

 4 LPRA secs. 772 n., 773-775, 780-781, 783, 2011 y 2021.

 4 LPRA secs. 772 n., 773-774 y 777-778.

 El 30 de julio de 2014 el Estado se opuso a la expedición del auto presentado por el licenciado Rivera Schatz.

 El Estado presentó una Urgente Solicitud de Reconsideración que denegamos mediante Resolución emitida el 5 de agosto de 2014.

 El Estado presentó una Urgente Solicitud de Reconsideración que denegamos mediante Resolución de 19 de agosto de 2014.

 Véase J. J. Álvarez González, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis, 2009, pág. 237.

 Véase E.B. Arroyo, Facultad de la Rama Judicial para reglamentar la profesión legal, 20 Rev. Jur. UPR 38 (1950).

 Véase, además, Martínez Rivera v. Sears, Roebuck, 98 DPR 641, 652 (1970) (“[s]z¿ misión como tal no se limita meramente a representar intereses privados [...] sino a ser un instrumento leal y eficaz de la administración de la justicia y del orden en nuestra sociedad”).

 Véase Cánon 38 del Código de Ética Profesional, 4 LPRA Ap. IX. Véanse, además: In re Díaz Nieves et als., 189 DPR 1000, 1020 (2013); In re Cuyar Fernández, 163 DPR 113, 117 (2004), citando a In re Santiago Rodríguez, 160 DPR 245, 254 (2003); Pueblo v. Susoni, 81 DPR 124 (1959); In re Bosch, 65 DPR 248 (1945); Boneta, Ex parte, 39 DPR 154 (1929); In re Díaz, 16 DPR 82 (1910). Para una discusión sobre este asunto, véase también Ramos Acevedo v. Tribunal Superior, 133 DPR 599 (1993).

 Véanse, además: In re González Blanes, 65 DPR 381, 390 (1945) (“este Tribunal [...] tiene facultad inherente para determinar quiénes pueden ejercer como abogado en las cortes insulares, facultad que conlleva la de eliminar del Registro de Abogados aquellos que por sus actuaciones se hagan indignos de ejercer la profesión” (énfasis suplido)); In re Bosch, supra; In re Arroyo Rivera, 63 DPR 796, 798 (1944); Guerrero v. Tribunal de Apelación, 60 DPR 241 (1942); In re Tormes, 30 DPR 267 (1922).

 Para un estudio histórico sobre los orígenes de la facultad inherente de los tribunales para reglamentar la profesión legal en el derecho angloamericano, véanse Arroyo, supra, y Guerrero v. Tribunal de Apelaciones, supra.

 Véanse, además: In re Andréu Ribas, 81 DPR 90, 121 (1959); In re Pagán, 71 DPR 761, 763 (1950); In re González Blanes, supra, págs. 390-391; In re Bosch, supra, pág. 251; In re Arroyo Rivera, supra; Guerrero v. Tribunal de Apelación, supra, págs. 247-252; Ex parte Jiménez, 55 DPR 54 (1939); In re Tormes, supra, pág. 268; Coll v. Leake, Juez de Distrito, 17 DPR 857 (1911); In re Abella, 14 DPR 748, 751 (1908).

 Por mandato Constitucional es la Asamblea Legislativa quien ostenta la facultad para aprobar leyes. Art. Ill, Sec. 17, Const. PR, LPRA, Tomo 1.

 Véanse, por ejemplo: In re Martínez Maldonado, 185 DPR 1085 (2012); In re Muñoz Franco, 173 DPR 688 (2008); In re González Carrasquillo, 164 DPR 813, 832 (2005); López Santiago, Ex parte, 147 DPR 909, 911 (1999); Pueblo v. Santaella, 91 DPR 350, 355-356 (1964).

 Somos conscientes de que existe jurisprudencia federal que ha atendido el asunto de la constitucionalidad de la colegiación obligatoria al amparo del derecho de asociación y el derecho a la libertad de expresión reconocido en la Constitución federal. Véanse, por ejemplo: Keller v. State Bar of Cal., 496 US 1 (1990); Lathtop v. Donohue, 367 US 820 (1961). No obstante, como ya hemos mencionado, en los casos de autos nos hemos limitado a analizar el derecho a la libertad de asociación según quedó consagrado específicamente en la Constitución de Puerto Rico, por lo cual esa jurisprudencia no resulta vinculante. Además, debemos recordar que las constituciones estatales pueden extender el ámbito de protección de los derechos constitucionales más allá del mínimo reconocido en la Constitución federal.

 Véase Alvarez González, op. cit., pág. 8.

 Véase Escuela de Administración Pública de la Universidad de Puerto Rico, La nueva Constitución de Puerto Rico, Río Piedras, EDUPR, 1954, págs. 224-225:
“el derecho de toda persona a unirse a otras para la promoción de propósitos comunes es un complemento necesario de la libertad individual. Bien poco significarían las libertades de conciencia, expresión y acción, si los individuos no pudiesen asociarse para hacer posible su disfrute. La libertad, entendida como la capacidad de cada cual para vivir aisladamente sin restricciones ni relaciones, es, sencillamente, una imposibilidad. La expresión libre de la personalidad humana presupone la cooperación organizada con los semejantes. Al mismo tiempo, la asociación permite la consecución de otros valores sociales y la integración de la solidaridad social. Sin respeto a esta libertad es inconcebible la democracia”.

 Id., pág. 225.

 2 Diario de Sesiones de la Convención Constituyente de Puerto Rico 1104 (2003).

 Véase Álvarez González, op. cit, pág. 11 (“Aunque la influencia de la Constitución federal es patente, en la Constitución de Puerto Rico se evidencia una importante influencia de la Declaración Universal de Derechos Humanos, proclamada por las Naciones Unidas”).

 Art. 20 de la Declaración Universal de Derechos Humanos.

 Álvarez González, op. cit., págs. 1114-1124.

 Como fundamento adicional, el Tribunal expresó lo siguiente: “[n]o se nos ha citado, ni hemos hallado en nuestra investigación independiente, decisión alguna que invalide el concepto de colegiación compulsoria. Por el contrario, abundan los casos en Estados Unidos en que se rechaza la contención efectuada aquí de que no puede obligarse a un abogado a pertenecer a una asociación profesional cuyos fines no apruebe”. Colegio de Abogados de P.R. v. Schneider, 112 DPR 540, 549.

 Alvarez González, op. cit., pág. 816.

 Véanse, por ejemplo: Com. de la Mujer v. Srio. de Justicia, 109 DPR 715, 733 (1980) (discrimen por sexo); Arroyo v. Rattan Specialties, Inc., 117 DPR 35, 63 (1986) (derecho de intimidad); De Paz Lisk v. Aponte Roque, 124 DPR 472, 489 (1989) (discrimen por extranjería); Pérez, Román v. Proc. Esp. Rel. de Fam., 148 DPR 201, 214 (1999) (discrimen por condición social); U.P.R. v. Laborde Torres y otros I, 180 DPR 253, 289 (2010) (libertad de expresión).

 AAR, Ex parte, supra.

 Alegato del Estado Libre Asociado de Puerto Rico en solicitud de desestimación de las demandas consolidadas de epígrafe de 11 de agosto de 2014, pág. 2.

 Aun en días recientes en donde se ha cuestionado la parcialidad de la Rama Judicial en distintos medios noticiosos del país, hemos sido proactivos implantando medidas para atender efectivamente ese asunto. Véase, por ejemplo, In re Enmdas. Rs. Disciplina Judicial, 191 DPR 563 (2014).

 Véanse: G. Figueroa Prieto, Reglamentación de la profesión legal, 82 (Núm. 2) Rev. Jur. UPR 519, 552 (2013); Portal Cibernético de la Rama Judicial, http:// www.ramajudicial.pr/opimones/.

 El Programa de Educación Jurídica Continua exige a los letrados cumplir con un total de veinticuatro (24) créditos en cursos académicos en un periodo de dos (2) años. Véase Regla 6 del Reglamento de Educación Jurídica Continua, 4 LPRAAp. XVU-D.

 Véase In re Proy. Conducta Prof. y Regl. Disc., 189 DPR 1032 (2013).

 Véase Ley Núm. 5-2013 (4 LPRA see. 2142).

 Colegio de Abogados v. Schneider [II], 117 DPR 504, 514 (1986).

 De esta manera, la Constitución de Puerto Rico establece que el Poder Legislativo será ejercido por runa Asamblea Legislativa compuesta por un Senado y una Cámara de Representantes. Véase Art. Ill, Sec. 1, Const. PR, LPRA, Tomo 1. Mientras que el Poder Ejecutivo lo ejercerá un Gobernador y el Poder Judicial el Tribunal Supremo de Puerto Rico y demás tribunales creados por ley. Véanse los Art. V, Sec. 1, y Art. IV, Sec. 1, Const. PR, LPRA, Tomo 1, respectivamente.

 Banco Popular Liquidador v. Corte, 63 DPR 66, 71-72 (1944). Véanse, además: J.J. Alvarez González, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis, 2010, págs. 236-237; G.R. Stone et al., Constitutional Law, 6ta ed., Nueva York, Aspen Publishers, 2009, págs. 366-358.

 Art. V, Sec. 1 y 6, LPRA, Tomo 1. Véanse, además: 4 Diario de Sesiones de la Convención Constituyente de Puerto Rico 2608-2615 (ed. 2003); In re Aprob. Rs. y Com. Esp. Ind., 184 DPR 575 (2012); Freire Ayala v. Vista Rent, 169 DPR 418, 444-445 (2006); Vives Vázquez v. E.L.A., 142 DPR 117, 141 (1996).

 Domínguez Castro et al. v. E.L.A. I, 178 DPR 1, 36 (2010). Véase, además, R. Serrano Geyls, Derecho constitucional de Estados Unidos y Puerto Rico, San Juan, Ed. C. Abo. PR, 1988, Vol. II, pág. 923.

 Según el profesor constitucionalista Henry Rottschaefer, “[e]l término inherente solo significa que el poder en cuestión fue incluido implícitamente en la concesión hecha por la Constitución en la distribución de poderes gubernamentales, aunque a veces se usa para indicar que la facultad en cuestión necesariamente pertenece a un departamento independientemente de la concesión constitucional”. (Traducción nuestra). H. Rottschaefer, Handbook of American Constitutional Law, St. Paul., West Publishing Co., 1939, pág. 52, esc. 31.
Respecto a esta facultad inherente reclamada por este Tribunal, el Prof. Guillermo Figueroa Prieto explica lo siguiente:
“Si algo ha quedado claro en las decisiones del Tribunal Supremo desde principios del siglo pasado hasta nuestros tiempos es que el Tribunal Supremo de Puerto Rico siempre ha reclamado tener poder inherente para reglamentar la abogacía. Tal poder descansa en el imperativo constitucional que emana de la doctrina de separación de poderes y que deposita en el Poder Judicial la facultad de administrar todo lo relativo a la administración del sistema de justicia, incluyendo la reglamentación de los abogados, ya que estos son considerados funcionarios del tribunal”. G. Figueroa Prieto, Propuesta para la reglamentación de la conducta profesional, 81 Rev. Jur. UPR 1, 15 (2012).
Aunque durante los debates la Convención Constituyente no hubo mención específica sobre el poder inherente de las Cortes para la regulación de los abogados, este no era un concepto ajeno para los redactores de nuestra Constitución. Particularmente, en lo que respecta a la Rama Judicial. Véase, e.g., Transcripción de las Vistas Públicas ante la Comisión de la Rama Judicial de la Convención Constituyente, pág. 165.

 In re Díaz Nieves et als., 189 DPR 1000, 1020 (2013); In re Cuyar Fernández, 163 DPR 113, 117 (2004); In re Santiago Rodríguez, 160 DPR 245, 254 (2003); Pueblo v. Susoni, 81 DPR 124, 154 (1959); In re Bosch, 65 DPR 248, 252 (1945); In re Rivera Colón, 63 DPR 713, 719 (1944); Boneta, Ex Parte, 39 DPR 154, 160 (1929); In re Eduardo Flores Colón, 37 DPR 784, 785 (1928); In re Tormes, 30 DPR 267, 269 (1922); Pereyó v. López et al., 22 DPR 780, 785 (1915); In re Díaz, 16 DPR 82, 92 (1910).

 Véanse: In re Dubón Otero, 153 DPR 829, 859 (2001); In re Fund. Fac. Der. E. Ma. de Hostos II, 150 DPR 508, 512 (2000) (Resolución); López Santiago, Ex parte, 147 DPR 909, 912 (1999); Colegio de Abogados de P.R. v. Schneider, 112 DPR 540, 546 (1982); In re Rodríguez Torres, 106 DPR 698, 733 (1978) (Resolución) (Op. de conformidad J. Martín); In re Liceaga, 82 DPR 252, 255 (1961); González v. Tribunal Superior, 75 DPR 585, 671 (1953); In re Pagán, 71 DPR 761, 763 (1950); In re Abella, 67 DPR 229, 238 (1947); In re González Blanes, 65 DPR 381, 391 (1945); In re Bosch, supra, pág. 251; Ex parte Jiménez, 55 DPR 54, 55 (1939).

 Como ejemplo de algunas instancias en que este Tribunal Supremo ha validado la legislación promulgada por la Asamblea Legislativa concernientes a los abogados y abogadas, véanse: Colegio de Abogados de P.R. v. Schneider, supra, y Col. de Abogados v. E.L.A., 181 DPR 135 (2011) (Resolución). En este último, el Tribunal Supremo declaró “no ha lugar” a un recurso de revisión solicitado por el Colegio de Abogados y ordenó la publicación de la Sentencia del Tribunal de Apelaciones, mediante la cual se validó la Ley Núm. 121-2009 y la Ley Núm. 135-2009. Como ejemplo de algunos casos en que se ha invalidado la legislación por entender que la misma constituía una usurpación al poder inherente de este Tribunal Supremo, véanse: Boneta Ex parte, 39 DPR 154 (1929); Ex parte Jiménez, supra. Este poder para anular la legislación ha sido reiterado en múltiples ocasiones. Véanse, e.g.: In re González Blanes, supra; In re Dubón Otero, supra, págs. 859-860 (voto particular de conformidad del J. Rivera Pérez).

 En palabras del profesor Figueroa Prieto: “el fundamento más sólido que se expone hoy día es que la doctrina del poder inherente responde a principios constitucionales que emanan de la separación de poderes. El raciocinio de este fundamento es que todo lo relacionado a la administración y funcionamiento de los tribunales es privativo del Poder Judicial”. (Escolio omitido). G. Figueroa Prieto, Reglamentación de la conducta profesional en Puerto Rico: pasado, presente y futuro, 68 (Núm. 4) Rev. Jur. UPR 729, 770 (1999).

 Véase esc. 7.

 In re González Blanes, supra, pág. 391.

 Véase Ley Núm. 78 de 11 de mayo de 1928, Leyes de Puerto Rico 533-534. Esta legislación enmendó la Ley Núm. 38 de 13 de abril de 1916, conocida como “Ley determinando reglas para el ejercicio de la profesión de abogado en Puerto Rico”.

 Boneta Ex parte, supra, págs. 165-166.

 Ex parte Jiménez, supra, pág. 57.

 In re Abella, supra, pág. 238.

 Específicamente, el Tribunal expresó lo siguiente:
“La integración se ha realizado por acción legislativa en muchos casos y en otros por regla de la corte estatal de última instancia, bien por poder expresamente conferido o en el ejercicio de su poder inherente. [...]
“El poder inherente de los tribunales en este campo es de tal magnitud que, aun ante la existencia de un estatuto que prohibía expresamente la colegiación compulsoria, se ha ejercido el poder judicial para disponer exactamente lo contrario”. (Citas omitidas). Colegio de Abogados de P.R. v. Schneider, supra, págs. 547-548.

 Véase Col. de Abogados v. E.L.A, 181 DPR 135 (2011).

 Exposición de Motivos de la Ley Núm. 109-2014, pág. 4.

 Id., pág. 3.

 íd., pág. 4. Véase, además, Art. 1 de la Ley Núm. 109-2014.

 Véase Informe de la Comisión de lo Jurídico de la Cámara de Representantes de Puerto Rico sobre el P. de la C. 1366 de 18 de octubre de 2013.

 íd., pág. 14.

 Informe Positivo del P. de la C. 1366 de la Comisión de lo Jurídico, Seguridad y Veteranos del Senado de Puerto Rico del 24 de junio de 2014, pág. 11.

 íd., pág. 12.

 íd.

 Véase el historial legislativo de la Ley Núm. 109-2014, el cual incluye, entre otros documentos, el Informe del P. de la C. 1366 de la Comisión de lo Jurídico de la Cámara de Representantes de Puerto Rico del 18 octubre de 2013; el Informe Positivo del P. de la C. 1366 de la Comisión de lo Jurídico, Seguridad y Veteranos del Senado de Puerto Rico del 24 de junio de 2014. Así como, las ponencias presentadas por el Colegio de Abogados de Puerto Rico el 20 de septiembre de 2013 y por el Departamento de Justicia el 8 de octubre de 2013. Véase, además, Alegato del Estado Libre Asociado de Puerto Rico en solicitud de desestimación de las demandas consolidadas de epígrafe presentado el 11 de agosto de 2014.

 No podría ser de otra manera, pues como parte del entendido de la separación de poderes establecido en la Constitución de Puerto Rico, no se justificaría que la Asamblea Legislativa, sin más, imponga al Poder Judicial unas condiciones que interfieran directamente con las funciones y prerrogativas que nuestra Carta Magna delegó exclusivamente al Poder Judicial. Lo contrario, sería una intromisión indebida con las labores de administración de la justicia y crasa violación al principio *844 básico de independencia judicial. Véase 1 Diario de Sesiones de la Convención Constituyente 617 (ed. 2003), de donde surge claramente la importancia de la autonomía en la administración de los tribunales como parte esencial del principio de independencia judicial. Como bien expresa el Prof. Guillermo Figueroa Prieto,
“en nuestra jurisdicción, por el contrario, el Artículo V de la Constitución del Estado Libre Asociado de Puerto Rico claramente adscribe el Poder Judicial al Tribunal Supremo y lo faculta para adoptar reglas sobre la administración de los tribunales. Fue la intención de los delegados a la Asamblea Constituyente proteger la independencia de la Rama Judicial, por lo que concederle a dicha rama de gobierno el control primario sobre la abogacía estaría en armonía con tal intención”. (Enfasis suplido). Figueroa Prieto, Reglamentación de la conducta profesional, supra, pág. 771. Véase, además, J.B. Fuster, La misión del abogado en el mundo contemporáneo y sus implicaciones para las escuelas de derecho, el Tribunal Supremo y el Colegio de Abogados, 36 Rev. Jur. UPR 579, 622 (1967).

 Como bien surge de la Opinión de este Tribunal, la experiencia por los pasados cinco años así lo ha demostrado. Véase la Parte III, acápite C de la Opinión del Tribunal, págs. 811-813.
* NOTA DE LA COMPILADORA:
La Jueza Presidenta Señora Fiol Matta se acogió al término dispuesto en la Regla 5(b) del Reglamento del Tribunal Supremo, 4 LPRAAp. XXI-B, y emitió esta opinión el 3 de noviembre de 2014.